HONORABLE TANA LIN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC., a Delaware corporation,

     Plaintiff,

v.

KUNAL BANSAL, an individual, d/b/a
LAVICHEATS.COM,

     Defendant.

Case No. 2:21-cv-1111-TL

PLAINTIFF BUNGIE, INC.'S MOTION
FOR DEFAULT JUDGMENT AGAINST
DEFENDANT KUNAL BANSAL

NOTE ON MOTION CALENDAR:
February 17, 2023

MOTION FOR DEFAULT AGAINST DEFENDANT BANSAL
(Case No. 2:21-cv-1111-TL)

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

# TABLE OF CONTENTS

**STATEMENT OF FACTS** ......................................................................................... 1

I.      Bungie and *Destiny 2* ....................................................................................... 1

II.     Defendant Bansal and the Lavicheats for *Destiny 2* ........................................ 2

III.    Procedural History and Service ........................................................................ 4

**ARGUMENT** ........................................................................................................... 4

I.      The Court Has Jurisdiction Over this Action and Bansal ................................. 4

II.     Default Judgment Standard ............................................................................... 9

III.    The *Eitel* Factors Weigh in Favor of Default Judgment ................................... 9

        A.      The Possibility of Prejudice to Bungie ................................................. 9

        B.      The Substantive Merits of Bungie's Claims and Sufficiency of the

                Complaint ........................................................................................... 10

                1.      Trafficking in Circumvention Devices ..................................... 10

                2.      Secondary Copyright Infringement ........................................... 12

                3.      Trademark Infringement & False Designation of Origin ......... 14

                4.      Washington Consumer Protection Act ...................................... 14

                5.      Tortious Interference With Contractual Relations .................... 16

        C.      The Sum of Money at Stake in the Case .............................................. 17

        D.      The Possibility of a Dispute Concerning Material Facts ..................... 18

        E.      Whether the Entry of Default is Due to Excusable Neglect ................ 18

        F.      The Policy Favoring Decisions on the Merits ..................................... 19

IV.     The Court Should Award Bungie $6,700,973.34 in Damages and Attorneys' Fees

        and Costs, and Permanently Enjoin Bansal ...................................................... 19

        A.      The Court Should Award Bungie $5,580,000 in Statutory Damages on Its

                DMCA Claim ...................................................................................... 20

        B.      The Court Should Award Bungie $300,000 in Statutory Damages on Its

                Copyright Infringement Claims .......................................................... 23

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – i

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

C.    The Court Should Award Bungie Bansal's Profits in the Amount of
      $579,270 on Its Trademark Claims ................................................................. 24

D.    The Court Should Award Bungie its Attorneys' Fees and Costs Incurred
      To-Date, Plus Fees and Costs Incurred After the Filing of This Motion .............. 25

E.    The Court Should Issue a Permanent Injunction Against Bansal ........................ 27

**CONCLUSION** ............................................................................................................... 30

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – ii

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ............................................ 12

4

*AMA Multimedia LLC v. Sagan Ltd.*, No. CV-16-01269-PHX-DGC,

5

    2016 U.S. Dist. LEXIS 141934 (D. Ariz. Oct. 13, 2016) ............................................ 7, 8

6

*Amazon Content Servs. LLC v. Kiss Library*, No. C20-1048 MJP,

7

    2021 U.S. Dist. LEXIS 242489 (W.D. Wash. Dec. 17, 2021) ........................................ 28

8

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ........................................................................ 7

9

*Blackstone Int'l, Ltd. v. E2 Ltd.*, No. C20-1686 TSZ,

10

    2022 U.S. Dist. LEXIS 197717 (W.D. Wash. Oct. 31, 2022) ........................................ 16

11

*Blizzard Entm't, Inc. v. Bossland GmbH*, No. SACV 16-1236-DOC (KESx),

12

    2017 U.S. Dist. LEXIS 58185 (C.D. Cal. Jan. 25, 2017) ....................................... 6, 7, 22

13

*Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006 (C.D. Cal. 2013) ......... 29

14

*Blizzard Entm't, Inc. v. Joyfun Inc.*, No. SACV 19-1582 JVS (DFMx),

15

    2020 U.S. Dist. LEXIS 74722 (C.D. Cal. Feb. 7, 2020) ............................................. 6, 7

16

*Blizzard Entm't, Inc. v. Reeves*, No. CV 09-7621 SVW (AJWx),

17

    2010 U.S. Dist. LEXIS 85560 (C.D. Cal. Aug. 10, 2010) .................................... 8, 21, 22

18

*Bungie, Inc. v. Aimjunkies.com*, No. C21-811 TSZ,

19

    2022 U.S. Dist. LEXIS 116950 (W.D. Wash. July 1, 2022) ..................................... 12, 13

20

*Cal. Brewing Co. v. 3 Daughters Brewing LLC*, No. 2:15-cv-02278-KJM-CMK,

21

    2016 U.S. Dist. LEXIS 52344 (E.D. Cal. Apr. 19, 2016) ................................................. 7

22

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................................ 5

23

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ............................................... 27

24

*craigslist, Inc. v. Kerbel*, No. C-11-3309 EMC,

25

    2012 U.S. Dist. LEXIS 108573 (N.D. Cal. Aug. 2, 2012) .............................................. 24

26

*craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039 (N.D. Cal. 2010) ........................... 14

27

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1    *Crim. Prods., Inc. v. Evans*, No. 16-cv-1647RAJ,

2        2018 U.S. Dist. LEXIS 58313 (W.D. Wash. Apr. 4, 2018)........................................ 23, 26

3    *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200 (W.D. Wash. 2014) ............................ 9, 10

4    *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2008)................................... 23

5    *Dish Network, L.L.C. v. SatFTA*, No. 5:08-cv-01561 JF (PSG),

6        2011 U.S. Dist. LEXIS 25038 (N.D. Cal. Mar. 9, 2011)..................................... 20, 26, 29

7    *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................ 28

8    *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)......................................................... 27

9    *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*,

10       538 F. Supp. 3d 1132 (D. Or. 2021) .................................................................................... 27

11    *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) .......................................................................... 9

12    *EMI April Music, Inc. v. Lanes, Inc.*, No. CV-08-162-EFS,

13       2009 U.S. Dist. LEXIS 141318 (E.D. Wash. Mar. 20, 2009)............................................ 26

14    *Eve Nev., LLC v. Derbyshire*, No. 21-0251-LK,

15       2022 U.S. Dist. LEXIS 17273 (W.D. Wash. Jan. 31, 2022)............................................. 29

16    *FameFlynet, Inc. v. Feel the Piece, LLC*, No. CV 17-5406 FMO (GJSx),

17       2018 U.S. Dist. LEXIS 28031 (C.D. Cal. Feb. 21, 2018)................................................. 23

18    *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ........................................................................... 26

19    *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR,

20       2014 U.S. Dist. LEXIS 37611 (W.D. Wash. Mar. 20, 2014) ............................... 27, 28, 29

21    *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR,

22       2014 U.S. Dist. LEXIS 12449 (W.D. Wash. Jan. 31, 2014)................................... 9, 10, 18

23    *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778 (1986) ............. 15

24    *Johnson v. Peter*, No. C21-1602-LK,

25       2023 U.S. Dist. LEXIS 378 (W.D. Wash. Jan. 3, 2023)........................................ 10, 18, 19

26    *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016)................................................. 25, 26

27    *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771 (2013) .................................................................... 15

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

*Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916 (N.D. Cal. 2010) ................... 17

*Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034 (9th Cir. 2022) ..................................... 5, 6

*Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133 (1997) ........................... 16

*MAI Sys., Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993) ....................... 27

*Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218 (9th Cir. 2011) .................... 6

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010) .................... 11

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007 (9th Cir. 1994) ...................... 19, 23, 24

*Nintendo of Am., Inc. v. Storman*, No. CV 19-7818-CBM-(RAOx),

    2021 U.S. Dist. LEXIS 148119 (C.D. Cal. Aug. 5, 2021) ........................................ 28, 29

*Olaes Enters., Inc. v. Richard Trading, Inc.*, No. 07CV922 WQH (BLM),

    2008 U.S. Dist. LEXIS 135157 (S.D. Cal. Jan. 15, 2008) ............................................. 24

*Olive v. Robinson*, No. C20-0356JLR,

    2023 U.S. Dist. LEXIS 10651 (W.D. Wash. Jan. 20, 2023) ........................................ 17, 19

*Padded Spaces LLC v. Weiss*, No. C21-0751JLR,

    2022 U.S. Dist. LEXIS 130519 (W.D. Wash. July 22, 2022) .................................. 15, 18

*Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27 (2009) ......................................... 16

*Peoples Bank v. S/Y Tempo*, No. 2:22-cv-1151,

    2022 U.S. Dist. LEXIS 231210 (W.D. Wash. Dec. 23, 2022)................................... 18, 19

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) ..................... 17

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ................................ 12, 13

*Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co.*, No. 2:18-cv-01032-

    TSZ, 2019 U.S. Dist. LEXIS 65889 (W.D. Wash. Apr. 11, 2019)................................ 9

*Philips N. Am. LLC v. KPI Healthcare, Inc.*, No. SACV 19-1765 JVS (JDEx),

    2021 U.S. Dist. LEXIS 168206 (C.D. Cal. Sept. 1, 2021)........................................ 21, 26

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,

    641 F. Supp. 2d 913 (N.D. Cal. 2009) ............................................................ 11

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ........................... 8

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – v

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ..................................... 5

*Sony Computer Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957 (N.D. Cal. 2006) .... 22, 26

*Sony Computer Entm't Am., Inc., v. Filipiak*, 406 F. Supp. 2d 1068 (N.D. Cal. 2005).... 20, 21, 23

*Sony Interactive Entm't LLC v. Scales*, No. EDCV 18-2141 JGB (KKx),

    2019 U.S. Dist. LEXIS 239865 (C.D. Cal. Mar. 18, 2019) ............................................. 28

*Vault Corp. v. Quaid Software, Ltd.*, 775 F.2d 638 (5th Cir. 1985) ............................................. 6

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668 (9th Cir. 2012) ..................................... 7

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, No. 3:20-cv-1602 (SRU),

    2022 U.S. Dist. LEXIS 178462 (D. Conn. Sept. 22, 2022) ............................................. 10

**Statutes and Rules**

15 U.S.C. § 1116 ............................................................................................................................ 27

15 U.S.C. § 1117(a) ....................................................................................................................... 24

15 U.S.C. § 1121(a) ......................................................................................................................... 4

15 U.S.C. § 1125(a) ....................................................................................................................... 14

15 U.S.C. § 1125(a)(1)(A) ............................................................................................................. 14

17 U.S.C. § 106 .............................................................................................................................. 12

17 U.S.C. § 410(c) ......................................................................................................................... 12

17 U.S.C. § 502(a) ......................................................................................................................... 27

17 U.S.C. § 504(c) ................................................................................................................... 20, 23

17 U.S.C. § 505 .............................................................................................................................. 25

17 U.S.C. § 1201(a) ....................................................................................................................... 10

17 U.S.C. § 1201(a)(2) ............................................................................................................. 10, 11

17 U.S.C. § 1203(b)(1) .................................................................................................................. 27

17 U.S.C. § 1203(b)(5) .................................................................................................................. 25

17 U.S.C. § 1203(c)(1) .................................................................................................................. 20

17 U.S.C. 1203(c)(3)(A) ................................................................................................................ 20

28 U.S.C. § 1331 .............................................................................................................................. 4

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

28 U.S.C. § 1338 .................................................................................................................. 4

28 U.S.C. § 1367(a) ............................................................................................................ 4

FED. R. CIV. P. 4(k)(2) .................................................................................................. 4, 5

FED. R. CIV. P. 8 ............................................................................................................... 10

FED. R. CIV. P. 55 ............................................................................................................... 1

FED. R. CIV. P. 55(b)(2) ..................................................................................................... 9

Local Civil Rule 55(b) ................................................................................................... 1, 9

RCW 19.86.010(2) ........................................................................................................... 16

RCW 19.86.020 ............................................................................................................... 15

RCW 19.86.090 ......................................................................................................... 25, 27

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Pursuant to FED. R. CIV. P. 55 and Local Civil Rule 55(b), Plaintiff Bungie, Inc. hereby requests that default judgment be entered against Defendant Kunal Bansal in the total amount of $6,700,973.34 (inclusive of damages and attorneys' fees and costs), and that a permanent injunction be entered against Bansal, as described herein.

## STATEMENT OF FACTS

**I.      Bungie and *Destiny 2***

Bungie is the developer and publisher of *Destiny 2*, a first-person, multiplayer shared-world game played by more than 30 million people around the world. (Declaration of James Barker in Support of Plaintiff's Motion for Default Judgment ¶ 4; Declaration of Ed Kaiser, Ph.D. in Support of Plaintiff's Motion for Default Judgment ¶ 5; *see also* Dkt. 1 at ¶¶ 1, 15-16.) *Destiny 2*, which was released in September 2017, is a "free-to-play" game that generates revenue in large part from sales of expansions and packs of content, season passes, and the premium currency "silver" which can be redeemed for in-game cosmetic content (i.e., content that does not affect gameplay). (Barker Decl. ¶¶ 5, 48-49; Kaiser Decl. ¶ 5.) As a result, ensuring that players have a fun, entertaining, and challenging gaming experience and therefore invest in additional content to enhance their gaming is critical to Bungie's business model for *Destiny 2*. (Barker Decl. ¶¶ 46-51.)

Bungie registers copyrights in *Destiny 2* and its major expansions, including to the software (literary work) and audiovisual components. (*See* Barker Decl. ¶¶ 9-11, Exs. 1, 2.) Bungie also owns a number of trademarks associated with the *Destiny* franchise, including but not limited to DESTINY, DESTINY and design, and DESTINY 2: BEYOND LIGHT. (*See* Barker Decl. ¶ 12, Ex. 3.)

As an unfortunate consequence of the success of *Destiny 2*, there are those who seek to profit off of Bungie's success and cheaters who wish to gain an unfair advantage over other players by using "cheats" or "hacks" to obtain the rewards and accolades that legitimate players have to work for. (*See* Barker Decl. ¶¶ 17-18, 52.) To combat such cheats and ensure a fair playing field for all players, Bungie employs contractual and technological measures.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

The first line of defense is Bungie's Limited Software License Agreement ("SLA"), which every user must agree to in order to access, download, or play *Destiny 2*. (Barker Decl. ¶¶ 13-15, Ex. 4.) Among other restrictions, the SLA prohibits users from exploiting *Destiny 2* or any of its parts commercially; copying, reproducing, distributing, or displaying any part of *Destiny 2* except as authorized by Bungie; creating or using any hacks or software to gain advantage in *Destiny 2*; and receiving or providing "boosting" services, which advance the player's progress or achieves results that are not solely based on the account holder's gameplay. (Barker Decl. ¶ 16; *see also* Dkt. 1 at ¶¶ 31-33.)

Bungie also employs technological measures to combat cheat software like that sold and distributed by Defendant. These technological measures function both within the *Destiny 2* game software client that resides on the player's computer and on Bungie's *Destiny 2* servers. (*See* Dkt. 1 at ¶¶ 34-39; *see also* Barker Decl. ¶¶ 19-21, 23-27; Kaiser Decl. ¶ 8.) Bungie also contracts with third parties – at considerable expense – for the use of anti-cheat technologies that automatically detect cheating. (*See* Barker Decl. ¶ 27.)

When Bungie's technological measures detect the presence of cheating software used in conjunction with *Destiny 2*, the offending player may be denied access to *Destiny 2* servers, their account may be suspended or banned, and/or Bungie may implement a HWID or "Hardware ID" ban, which uniquely identifies the cheating player's computer and prevents the player from accessing *Destiny 2* by creating a new account or using another player's account from the same computer. (Barker Decl. ¶¶ 29-30; *see also* Dkt. 1 at ¶¶ 39-40.)

## II.    Defendant Bansal and the Lavicheats for *Destiny 2*

Defendant Kunal Bansal, who is also known by the alias "Lavi," is the owner, operator, and/or administrator of websites that sell or have sold cheat software for Bungie's *Destiny 2* game (the "Cheat Software"). (Dkt. 1 at ¶¶ 5, 43; *see also* Barker Decl. ¶¶ 33-34; Declaration of Steven Guris in Support of Plaintiff's Motion for Default Judgment ¶ 4; Declaration of Stacia N. Lay in Support of Plaintiff's Motion for Default Judgment ¶ 2.) At the time this lawsuit was filed, Bansal marketed, sold, and distributed the Cheat Software primarily through the

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 2

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1   <lavicheats.com> website (the "Lavicheats Website"). (Dkt. 1 at ¶ 43; *see also* Lay Decl. ¶¶ 2-

2   4.) However, after receiving notice of this lawsuit, Bansal moved his unlawful activities with

3   respect to the Cheat Software to one or more other websites believed to be owned and/or

4   operated by him, including the websites located at <cobracheats.com>, <lavicheats.org>, and

5   <protocolv.com>. (Lay Decl. ¶¶ 7-10, Exs. 6-9; *see also* Dkt. 32 at ¶¶ 3-12, Exs. 1-7.)

6          Bansal offered two versions of the Cheat Software for *Destiny 2* – the Delta or x22 cheat,

7   which had limited features, and the Premium or Ring-1 cheat, which offered a number of

8   additional features. (*See* Guris Decl. ¶¶ 5-7.) The prices for the Delta *Destiny 2* cheat ranged

9   from $9.99 to $129 while the Premium/Ring-1 Destiny 2 cheat ranged from $19.90 to $249. (*See*

10  Lay Decl. ¶ 3.) Both versions of the Cheat Software for *Destiny 2* offered features referred to as

11  an "aimbot" and "ESP" or extra-sensory perception. "Aimbot" automates weapon aiming by

12  allowing the player using the cheat software to "snap" to a target and quickly take out other

13  players or NPCs (non-player characters) in-game. "ESP," sometimes referred to as a "wallhack,"

14  allows players using the cheat software to see the locations of their opponents through walls,

15  obstacles and other terrain that would obscure the player's view during normal *Destiny 2*

16  gameplay. (Guris Decl. ¶¶ 34-38, 54-55; *see also* Barker Decl. ¶¶ 38-39; Kaiser Decl. ¶¶ 9, 13-

17  15.) The Bansal's "Premium" cheat for *Destiny 2* offers a number of additional hacks to the

18  game that give players using the cheat software an unfair advantage over legitimate players who

19  play the game as designed by Bungie. (*See* Guris Decl. ¶¶ 39-53; Kaiser Decl. ¶¶ 16-17.)

20         After a user purchases the Cheat Software for *Destiny 2*, the loader program "injects" the

21  cheat software code into the *Destiny 2* game software client on the player's computer. This

22  malicious code modifies the behavior of the *Destiny 2* software client and causes the software to

23  operate and appear differently for the cheating player than it does for the non-cheating player.

24  (Kaiser Decl. ¶¶ 9-18; Guris Decl. ¶¶ 28-31, 36-38, 54-55; Barker Decl. ¶¶ 43-44, Ex. 5.) These

25  modifications are created with the intent and effect of providing the cheating player with an

26  unfair competitive advantage over the legitimate player. Additionally, the Cheat Software alters

27  the display and gameplay experience with visual overlays and graphical elements that are not

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 3

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

part of Bungie's *Destiny 2*. (*See* Dkt. 1 at ¶¶ 54-59; *see also* Barker Decl. ¶¶ 43-44, Ex. 5.)

## III.     Procedural History and Service

Bungie filed its Complaint in this action on August 18, 2021 against, as relevant here, Defendant Kunal Bansal. (*See* Dkt. 1.) Bungie alleges a number of federal and state law claims arising from Bansal's marketing, promotion, sale, distribution, and/or support of software "cheats" or "hacks" for Bungie's online, multiplayer first-person shooter video game, *Destiny 2*. (Dkt. 1 at ¶¶ 1-2, 64-135.) Due to the inability to locate a physical address for Bansal – who is believed to reside in India – on September 17, 2021, Bungie filed a motion seeking leave to serve Bansal with the Complaint and Summons in this action by alternative means, specifically, by email and by submission of a post to a public discussion forum on Bansal's Lavicheats Website. (Dkt. 7.) The Court granted the motion on September 22, 2021. (Dkt. 10.) Pursuant to that Order, Bungie served Bansal via email on September 23, 2021 and by forum post submission on September 23, 2021 and November 22, 2021, and Bungie filed proofs of such service. (Dkts. 11, 20.) However, Bansal failed to respond to the Complaint or otherwise appear in this action. Therefore, on December 15, 2021, Bungie filed a motion for entry of default against Bansal, which was granted on May 19, 2022. (*See* Dkts. 24, 29.)

## ARGUMENT

## I.     The Court Has Jurisdiction Over this Action and Bansal

As an initial matter, there can be no reasonable dispute that the Court has subject matter jurisdiction over this matter. Bungie has asserted, in relevant part, claims under the Digital Millennium Copyright Act ("DMCA"), the Copyright Act, and the Lanham Act, thereby giving the Court federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. 1121(a). Moreover, the Court has supplemental jurisdiction over Bungie's state law claims under 28 U.S.C. § 1367(a) as those claims are related to Bungie's claims under federal law, forming part of the same case or controversy against Bansal.

The Court similarly has personal jurisdiction over nonresident Bansal via the federal long-arm statute, FED. R. CIV. P. 4(k)(2), by virtue of Bansal's direct and active participation in

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

the marketing, promotion, sale, distribution, and/or support of the Cheat Software for *Destiny 2* in the U.S. through Bansal's Lavicheats Website.

Under FED. R. CIV. P. 4(k)(2), personal jurisdiction over a defendant is established if the claims arise under federal law and:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

As all of the required elements are met, the Court's exercise of personal jurisdiction over Bansal is appropriate.

First, Bungie has asserted claims arising under federal law. Second, Bansal has not consented to jurisdiction in any state's courts of general jurisdiction. Finally, as demonstrated below, analysis of the third factor – consistency of jurisdiction with the U.S. Constitution and laws – also supports the Court's exercise of personal jurisdiction over Bansal.

The "due process analysis under Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1039 (9th Cir. 2022) (internal quotation marks omitted). Under this Circuit's test for personal jurisdiction, Bungie need only demonstrate that (1) the nonresident defendant has either purposefully directed his activities at the United States or purposefully availed himself of the privilege of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to make a compelling case that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802.

To establish "purposeful direction," the Court applies the three-part "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984), which requires that the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 5

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011) (internal quotation marks omitted). Here, the "effects" test is satisfied.

First, Bansal owned, operated, and administered the Lavicheats Website. *Blizzard Entm't, Inc. v. Joyfun Inc.*, No. SACV 19-1582 JVS (DFMx), 2020 U.S. Dist. LEXIS 74722, *16 (C.D. Cal. Feb. 7, 2020) ("*Joyfun*") (intentional acts included "conducting business in the United States by distributing the Infringing Game on platforms such as the Google Play store and Microsoft App store, selling virtual currency to American customers, and advertising the Infringing Game via platforms like Facebook"); *Blizzard Entm't, Inc. v. Bossland GmbH*, No. SACV 16-1236-DOC (KESx), 2017 U.S. Dist. LEXIS 58185, *10 (C.D. Cal. Jan. 25, 2017) ("*Bossland*") (finding that defendant "created a website through which one can license software" and the "offering of software for sale on the website is an intentional act").

Second, the Lavicheats Website promoted and offered for sale cheat software for a number of video games owned by U.S.-based companies, including Bungie's *Destiny 2* game. (*See* Lay Decl. ¶ 6, Exs. 4, 5.) The Lavicheats Website is written in English and displays prices in U.S. dollars, there is no suggestion that Bansal attempted to restrict or limit the ability of U.S. customers to access the Lavicheats Website and purchase the cheat software, such as by using geoblockers or filtering out U.S. users, and Bansal used California-based Discord to distribute the Cheat Software and provide customer support services (*see* Dkt. 40 at ¶¶ 15-22, Exs. 8-12). *See Joyfun*, 2020 U.S. Dist. LEXIS 74722 at *17 (express aiming where defendant, among other things, provided prices in U.S. dollars and English-language chat rooms and communicated with customers using Discord); *Lang Van*, 40 F.4th at 1042 (noting that defendant "did not choose to opt out of the United States or geoblock the content" at issue); *Vault Corp. v. Quaid Software, Ltd.*, 775 F.2d 638, 640 (5th Cir. 1985) (exercise of personal jurisdiction appropriate where defendant "made no attempt to limit the states in which its product was marketed"). And, through the marketing and sale of the Cheat Software for *Destiny 2*, Bansal expressly aimed intentional acts at Bungie, a U.S. company, including by using Bungie's Destiny Marks and

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

copyrighted imagery from *Destiny 2*. *See, e.g., Joyfun*, 2020 U.S. Dist. LEXIS 74722 at \*17 (defendants included trademarks "Warcraft" and "Blizzard" in their website html code); *Cal. Brewing Co. v. 3 Daughters Brewing LLC*, No. 2:15-cv-02278-KJM-CMK, 2016 U.S. Dist. LEXIS 52344, \*9 (E.D. Cal. Apr. 19, 2016) ("CBC alleges defendants have used plaintiff's mark for the purpose of promoting defendants' business."); *Bossland*, 2017 U.S. Dist. LEXIS 58185 at \*14-15 (cheat software to be used exclusively with U.S.-designed and U.S.-based game that was widely circulated in the U.S. and caused copyright injury in the U.S. was conduct purposefully directed at the U.S.). Moreover, Bansal's business "is parasitic in nature" in that "it functions by piggybacking on [Bungie's] sale of its game[] and undermining the gaming environment [Bungie] is seeking to create." *Bossland*, 2017 U.S. Dist. LEXIS 58185 at \*14.

Third, it was foreseeable that Bansal's promotion and sale of cheat software that is intended only to be used in connection with Bungie's *Destiny 2* game and which exploits Bungie's intellectual property would create harm to Bungie in the United States, where Bungie is located and has its largest player base. *Bossland*, 2017 U.S. Dist. LEXIS 58185 at \*10-11 ("Bossland had to anticipate that Blizzard, a company well known to be based in the United States, would suffer loss in the United States as a result of Bossland's software.") (citing *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 679 (9th Cir. 2012) (finding it foreseeable that the harm inflicted by copyright infringement "will be inflicted . . . where the copyright holder has its principal place of business")). As all three parts of the "effects" test are met, "purposeful direction" is established.

The requirement that the claim arise out of the defendant's U.S. forum-based activities is also met because Bungie's claims would not have occurred but for Bansal's above-described contacts with the U.S. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ("We rely on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction."); *AMA Multimedia LLC v. Sagan Ltd.*, No. CV-16-01269-PHX-DGC, 2016 U.S. Dist. LEXIS 141934, \*17 (D. Ariz. Oct. 13, 2016) (finding the "but for" test satisfied because defendant "anticipated, desired, and

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 7

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1   achieved a substantial [U.S.] viewer base with the intent of commercial gain" and defendant's

2   website "specifically targeted [plaintiff's] content, knowing [plaintiff] was a [U.S.] company

3   protected by [U.S.] copyright laws").

4           As the first two prongs of the personal jurisdiction test are met, the burden shifts to

5   Bansal to present the requisite compelling case that the exercise of personal jurisdiction would be

6   unreasonable. Even had Bansal chosen to participate in this action, he would be unable to show

7   that the exercise of personal jurisdiction is unreasonable.

8           "The exercise of jurisdiction is reasonable if it comports with traditional notions of fair

9   play and substantial justice." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir.

10  2002). Seven factors are considered in assessing reasonableness, none of which are dispositive:

11          (1) the extent of a defendant's purposeful interjection; (2) the burden on the
12          defendant in defending in the forum; (3) the extent of conflict with the
        sovereignty of the defendant's state; (4) the forum state's interest in adjudicating
13      the dispute; (5) the most efficient judicial resolution of the controversy; (6) the
        importance of the forum to the plaintiff's interest in convenient and effective
14      relief; and (7) the existence of an alternative forum.

15  *Id.*

16          Here, all seven factors establish reasonableness. First, Bansal purposefully interjected

17  himself into the U.S. market by engaging in the above-described conduct. While the second and

18  third factors are unknown because Bansal has chosen not to participate in this litigation, all

19  reasonable inferences should be made in favor of Bungie in the default judgment context. *See*

20  *Blizzard Entm't, Inc. v. Reeves*, No. CV 09-7621 SVW (AJWx), 2010 U.S. Dist. LEXIS 85560,

21  *8 (C.D. Cal. Aug. 10, 2010) ("*Reeves*"). The fourth factor also establishes reasonableness

22  because, in addition to having an interest in protecting U.S. companies such as Bungie, the

23  "United States has a significant interest in resolving disputes of United States copyright law

24  involving infringement by foreign defendants." *AMA Multimedia*, 2016 U.S. Dist. LEXIS

25  141934 at *20. The fifth and sixth factor are also met because this dispute involves protection of

26  a U.S.-based company in a dispute arising under U.S. laws. Lastly, as Bansal has not appeared,

27  there is no evidence that an alternative forum exists.

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 8

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1   In short, the Court has personal jurisdiction over Bansal.

2   **II.     Default Judgment Standard**

3          Pursuant to FED. R. CIV. P. 55(b)(2) and Local Civil Rule 55(b), after a defendant's

4   default is entered, the Court has authority to order default judgment. In exercising its discretion,

5   the Court considers the so-called *Eitel* factors:

6          (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
       substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
7       stake in the action, (5) the possibility of a dispute concerning material facts,
       (6) whether the default was due to excusable neglect, and (7) the strong policy
8       underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

9   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). For purposes of a motion for default

10  judgment, "the court presumes all well-pleaded factual allegations related to liability are true."

11  *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014). No presumption

12  of truth applies to factual allegations regarding the amount of damages, however. *Id.* Rather, "the

13  plaintiff is required to prove all damages sought in the complaint, and the court must ensure that

14  the amount of damages is reasonable and demonstrated by the evidence." *Id.* Here, each of the

15  *Eitel* factors support entry of default judgment in Bungie's favor against Bansal.

16  **III.    The *Eitel* Factors Weigh in Favor of Default Judgment**

17          **A.      The Possibility of Prejudice to Bungie**

18          In the context of a default judgment motion, prejudice "exists where the plaintiff has no

19  recourse for recovery other than default judgment." *Getty Images (US), Inc. v. Virtual Clinics*,

20  No. C13-0626JLR, 2014 U.S. Dist. LEXIS 12449, *7 (W.D. Wash. Jan. 31, 2014) (internal

21  quotation marks omitted). Additionally, a defaulting defendant's "failure to appear or otherwise

22  participate in this action deprives [plaintiff] of the ability to conduct discovery as to the true

23  extent" of the harm caused by defendant's unlawful activities and supports the existence of

24  prejudice. *Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co.*, No. 2:18-cv-

25  01032-TSZ, 2019 U.S. Dist. LEXIS 65889, *20 (W.D. Wash. Apr. 11, 2019) (concluding that

26  plaintiff would be prejudiced "because it lacks any other means to prevent the Defaulting

27  Defendants from causing future harm").

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 9

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1    Here, Bansal has chosen not to participate in this action despite having actual knowledge

2  of this case and Bungie's allegations and claims against him. Moreover, even after Bansal

3  learned of Bungie's claims against him, he merely attempted to move his unlawful activities with

4  respect to the cheats for Bungie's *Destiny 2* to one or more other websites and encouraged users

5  to purchase the cheats from those other sites. (*See* Lay Decl. ¶¶ 7-10.) Therefore, Bungie has no

6  other recourse for relief from Bansal's past unlawful acts or any other means to prevent him from

7  causing future harm other than default judgment. *See Johnson v. Peter*, No. C21-1602-LK, 2023

8  U.S. Dist. LEXIS 378, *9 (W.D. Wash. Jan. 3, 2023) (concluding that the first factor favored

9  default judgment as the plaintiffs were prejudiced because "they [would be] left without a legal

10  remedy"). As a result, this first factor supports the entry of default judgment against Bansal.

11    **B.    The Substantive Merits of Bungie's Claims and Sufficiency of the Complaint**

12    The second and third *Eitel* factors – the substantive merits of plaintiff's claims and the

13  sufficiency of the complaint – are frequently considered together. *See Curtis*, 33 F. Supp. 3d at

14  1211. These two factors weigh in favor of default judgment "where the complaint sufficiently

15  states a claim for relief under the liberal pleading standards embodied in" FED. R. CIV. P. 8.

16  *Getty*, 2014 U.S. Dist. LEXIS 12449 at *9 (internal quotation marks omitted). Here, these factors

17  support the entry of default judgment against Bansal.

18    ***1.    Trafficking in Circumvention Devices***

19    Section 1201(a)(2) of the DMCA prohibits trafficking of technology that is primarily

20  designed or produced for the purpose of circumventing a technological measure that effectively

21  controls access to a copyrighted work, that has limited commercially significant purpose other

22  than to circumvent such a technological measure, or that is marketed for such circumvention use.

23  17 U.S.C. § 1201(a)(2). Courts have construed the language in Section 1201(a) describing a

24  technological measure that "effectively controls access" to a copyrighted work "capaciously,"

25  and have held "that a technological measure need not establish an impenetrable barrier around a

26  protected work to be 'effective' as a matter of law." *Yout, LLC v. Recording Indus. Ass'n of Am.,*

27  *Inc.*, No. 3:20-cv-1602 (SRU), 2022 U.S. Dist. LEXIS 178462, *24, 38-45 (D. Conn. Sept. 22,

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

2022); *see also Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 641 F. Supp. 2d 913, 932

(N.D. Cal. 2009) ("The DMCA is predicated on the authority of the copyright owner not whether

or not [the technological measure] is a strong means of protection.") (internal quotation marks

omitted).

*Destiny 2* is a copyrighted work. Bungie has registered copyrights in *Destiny 2* both as a

literary work (the software) and an audiovisual work. (Dkt. 1 at ¶ 24, Exs. 1-4; Barker Decl.

¶¶ 9-11, Exs. 1, 2.) Bungie uses technological measures that are designed to control access to the

copyrighted work, namely, *Destiny 2*, and, as relevant here, to detect and deny access to players

using cheat software that infiltrates, manipulates, and/or modifies the *Destiny 2* software code

and/or its dynamic audiovisual elements. (Dkt. 1 at ¶¶ 34-42, 66; *see also* Barker Decl. ¶¶ 19-21,

23-27, 29-31; Kaiser Decl. ¶¶ 4, 6-8; Guris Decl. ¶¶ 22-26.)

The Cheat Software for *Destiny 2* promoted, sold, and distributed by Bansal contains or is

comprised of technologies, products, services, components, or parts thereof that are primarily

designed or produced for the purpose of circumventing Bungie's technological measures that

effectively control access to *Destiny 2*. (*See* Dkt. 1 at ¶¶ 47-51, 67; *see also* Barker Decl. ¶¶ 26-

27, 31-32, 38, 56; Kaiser Decl. ¶¶ 6-18; Guris Decl. ¶¶ 23, 27-33, 56.) The Cheat Software for

*Destiny 2* has no commercially significant purpose or use other than to circumvent Bungie's

technological measures that control access to Bungie's copyrighted *Destiny 2* work (*see* Dkt. 1 at

¶¶ 48-51, 68); indeed, the Cheat Software has "no function other than to facilitate the playing of

[*Destiny 2*]." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 953 (9th Cir. 2010).

Moreover, Bansal specifically markets the Cheat Software for *Destiny 2* for use in circumventing

Bungie's technological measures that effectively control access to Bungie's copyrighted work,

promoting the cheats as the "Best Undetected Destiny 2 hacks and cheats" and offering "quality

code that will slide through undetected during gameplay." (*See, e.g.*, Dkt. 1 at ¶¶ 48-51; *see also*

Lay Decl. ¶ 4, Ex. 2.)

Thus, Bansal is offering to the public, providing, promoting, or otherwise trafficking in

technology that violates 17 U.S.C. § 1201(a)(2), as alleged in Bungie's first cause of action. (*See*

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

Dkt. 1 at ¶¶ 64-76.)

### 2.     *Secondary Copyright Infringement*

To establish direct copyright infringement, Bungie must allege (1) ownership of a valid copyright in *Destiny 2*, and (2) violation of at least one of the exclusive rights granted to Bungie, the copyright owner, by users of Bansal's Cheat Software for *Destiny 2*. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

With its Complaint, Bungie submitted its copyright registrations for *Destiny 2* and the expansion *Destiny 2: Beyond Light*, which cover both works as literary works (with respect to the software code) and audiovisual works. (*See* Dkt. 1 at ¶ 24, Exs. 1-4; *see also* Barker Decl. ¶¶ 9-11, Exs. 1, 2.) Those registrations "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate" because they were issued within five years after first publication of the works. *See* 17 U.S.C. § 410(c). Additionally, as alleged in Bungie's Complaint and reinforced by the declarations supporting this Motion, when a cheat user downloads the *Destiny 2* cheats sold by Bansal, a new copy of software code is created from *Destiny 2*'s copyrighted code that was incorporated into the cheat software. (*See* Dkt. 1 at ¶¶ 55-59, 80-82, 91-92; *see also* Kaiser Decl. ¶¶ 9-12, 18; Guris Decl. ¶¶ 27, 56.) Moreover, because the cheat software alters the visual output of *Destiny 2* and the way the game performs for players using the cheats, the software creates unauthorized derivative works of *Destiny 2*. (*See* Dkt. 1 at ¶¶ 55-59, 80-82, 91-92; *see also* Barker Decl. ¶¶ 43-44; Kaiser Decl. ¶¶ 9-12, 18; Guris Decl. ¶¶ 37-38, 54-55, Exs. 8-14.) As a result, users of Bansal's Cheat Software in connection with *Destiny 2* commit direct infringement of both the software code and audiovisual copyrights in *Destiny 2*. *See* 17 U.S.C. § 106.

"To be liable for a claim of contributory infringement, a defendant must (1) know of the direct infringement, and (2) either induce, cause, or materially contribute to the infringing conduct." *Bungie, Inc. v. Aimjunkies.com*, No. C21-811 TSZ, 2022 U.S. Dist. LEXIS 116950, *7 (W.D. Wash. July 1, 2022); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). Here, Bungie's Complaint establishes that Bansal induces and/or materially

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

contributes to the direct infringement of users of the Cheat Software for *Destiny 2* by selling and distributing the cheat software with knowledge of the resulting infringement by the Cheat Software purchasers, instructing purchasers on how to install and use the Cheat Software in *Destiny 2*, and providing support services for installation and use of the Cheat Software. (*See* Dkt. 1 at ¶¶ 81-82.)

The well-plead allegations of the Complaint also establish that Bansal is liable for vicarious infringement. "To prevail on a vicarious infringement claim, a plaintiff must prove that the defendant (1) enjoyed a direct financial benefit from the infringing activity of the direct infringer; and (2) declined to exercise the right and ability to supervise or control that infringing activity." *Bungie*, 2022 U.S. Dist. LEXIS 116950 at *8 (internal quotation marks omitted); *Perfect 10*, 494 F.3d at 802. As Bungie has alleged, Bansal indisputably received a direct financial benefit from the infringement of users of the Cheat Software for *Destiny 2* that he promoted, sold, and distributed; he received payments for purchases of the Cheat Software. Moreover, Bansal had the right and ability to supervise or control the infringing activity of the users of his Cheat Software. (*See* Dkt. 1 at ¶ 92.) As an example of the control he possessed over the infringement by the users of his Cheat Software, Bansal purported to stop offering the Cheat Software after receiving notice of this lawsuit.[1] *See Bungie*, 2022 U.S. Dist. LEXIS 116950 at *9 (evidence that the defendants exercised control over the purchasers of their cheat software included defendants' removal of the cheat software from their website after receiving a cease and desist letter). However, prior to that purported cessation of sales and distribution, Bansal took active steps to encourage and facilitate the infringement by providing support and advice regarding the download, installation, and use of the Cheat Software by purchasers in order to avoid detection by Bungie. Indeed, Bansal's entire business model was based on encouraging and facilitating the infringements by Cheat Software users.

---

[1] Of course, even after Bansal purportedly stopped selling and distributing the Cheat Software for *Destiny 2* on the Lavicheats Website, the evidence suggests that he simply moved the operation to other websites, including the Cobracheats website, which he encouraged visitors to the Lavicheats Website to use to purchase their *Destiny 2* cheats. (*See* Lay Decl. ¶ 7, Ex. 6.)

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

### 3. Trademark Infringement & False Designation of Origin

The well-plead allegations of Bungie's Complaint likewise establishes Bansal's liability for trademark infringement and false designation of origin under the Lanham Act. To establish trademark infringement, a plaintiff must show:

> (1) it owns the trademark at issue; (2) the defendant has used in commerce without authorization, a copy, reproduction, counterfeit or colorable imitation of the plaintiff's mark in connection with the sale, distribution, or advertising of goods and services; and (3) the defendant's use of the mark is likely to cause confusion or to cause mistake or to deceive.

*craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1058 (N.D. Cal. 2010). Similarly, to prevail on a false designation of origin claim under 15 U.S.C. § 1125(a), the plaintiff "must show that the defendant's use of its mark is likely to cause confusion, deception or mistake as to 'the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.'" *craigslist*, 694 F. Supp. 2d at 1058 (quoting 15 U.S.C. § 1125(a)(1)(A)).

Here, Bungie alleged its ownership of a number of trademarks used in connection with the *Destiny* franchise, i.e., the Destiny Marks. (*See* Dkt. 1 at ¶¶ 25-27. Ex. 5; Barker Decl. ¶ 12, Ex. 3.) Bungie also alleged that Bansal, without authorization, used one or more of the Destiny Marks in connection with his promotion, sale, and distribution of the Cheat Software for *Destiny 2*. (*See, e.g.*, Dkt. 1 at ¶¶ 52-53; *see also* Lay Decl. ¶ 5.) Finally, Bungie has adequately alleged that Bansal's unauthorized use of one or more of the Destiny Marks in connection with his advertising and sale of Cheat Software for *Destiny 2* is likely to deceive customers and potential customers regarding the origin, affiliation, association, connection or endorsement of Bansal's products. (*See, e.g.*, Dkt. 1 at ¶¶ 101-102, 107-108.)

Therefore, Bungie has adequately alleged the substantive merits of its Lanham Act claims.

### 4. Washington Consumer Protection Act

To establish a violation of the Washington Consumer Protection Act ("CPA"), a plaintiff must allege "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce;

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 14

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

(3) that impacts the public interest; (4) causes injury to the plaintiff's business or property; and (5) that injury is causally linked to the unfair or deceptive act." *Padded Spaces LLC v. Weiss*, No. C21-0751JLR, 2022 U.S. Dist. LEXIS 130519, *11 (W.D. Wash. July 22, 2022) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778 (1986)). "Absent unusual circumstances, the analysis of a CPA claim will follow that of the [federal] trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Padded Spaces*, 2022 U.S. Dist. LEXIS 130519 at *11 (internal quotation marks omitted). Bungie has satisfied each of these elements.

As to the violation of the CPA arising from Bansal's infringing use of Bungie's Destiny Marks to advertise, promote, and sell the Cheat Software for *Destiny 2*, the above discussion regarding Bungie's trademark infringement and false designation of origin claims under the Lanham Act applies equally to the CPA claim and demonstrates Bansal's liability.

In addition, Bungie's well-pleaded allegations demonstrate that Bansal's other activities – including but not limited to his interference with Bungie's contractual relationships with its *Destiny 2* players, his exploitation of Bungie's intellectual property to unjustly enrich himself at Bungie's expense – constitute unfair methods of competition and unfair and deceptive acts or practices, which are damaging to the public interest in violation of RCW 19.86.020. (*See* Dkt. 1 at ¶¶ 43-61, 116; *see also* Barker Decl. ¶¶ 43-54, 56-60, Ex. 5; Lay Decl. ¶ 6, Exs. 4, 5.)

An unfair or deceptive act or practice can be "a per se violation of a statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787 (2013). The marketing, sale, and distribution of cheat software deceives both Bungie and the gaming public. Moreover, Bungie is not the only victim of Bansal's exploitative and unlawful sale of cheat software for video games. At the time this lawsuit was filed, Bansal offered more than 15 different video game cheats spanning multiple game franchises from other developers, including Apex Legends, Overwatch, Call of Duty, Rainbow Six, League of Legends, Fortnite, Rust, and Valorant. (Lay Decl. ¶ 6.) Moreover, a

recent check of the Lavicheats Website shows that Bansal appears to have expanded his inventory of cheats for other companies' games. (*See* Lay Decl. ¶ 6, Ex. 5.) Thus, Bansal's actions have the capacity to deceive substantial portions of the public, including players of *Destiny 2* and any other games for which Bansal markets, promotes, distributes, or sells cheat software. *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 47 (2009) ("A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public."). Nor can there be any dispute that these unfair or deceptive acts or practices occurred in trade or commerce, as Bansal's promotion, sale, and distribution of the Cheat Software for *Destiny 2* was undoubtedly a commercial enterprise. *See* RCW 19.86.010(2) (defining "trade" and "commerce"). Finally, the harm to Bungie is manifest. Bungie has been forced to incur significant costs in addressing the use of cheat software, including but not limited to Bansal's Cheat Software, and has suffered loss of business and revenue and reputational harm that is incalculable. (Barker Decl. ¶¶ 26-27, 32, 46-54, 56-59, Ex. 6; *see also* Guris Decl. ¶¶ 3, 57-58.)

Therefore, default judgment is also warranted on Bungie's claim for Bansal's violations of the CPA.

### 5.    *Tortious Interference With Contractual Relations*

"To establish tortious interference with a contractual relationship . . . , a plaintiff must prove (i) the existence of a valid contractual relationship . . . , (ii) the defendant's knowledge of that relationship, (iii) an intentional interference inducing or causing a breach or termination of the relationship . . . , (iv) the defendant's interference had an improper purpose or used an improper means, and (v) resultant damage." *Blackstone Int'l, Ltd. v. E2 Ltd.*, No. C20-1686 TSZ, 2022 U.S. Dist. LEXIS 197717, *17-18 (W.D. Wash. Oct. 31, 2022) (citing *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997)). Each of these elements are satisfied here.

Bungie's SLA for Destiny 2 is a valid and enforceable contract between Bungie and the players of *Destiny 2* and the SLA expressly prohibited players from using cheats like Bansal's Cheat Software. (*See* Dkt. 1 at ¶¶ 31-33, 121-123; Barker Decl. ¶¶ 13-16, Ex. 4.) Bansal was

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 16

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

well aware that Bungie's agreement for download and use of *Destiny 2* prohibited the use of, among other things, cheats, hacks, and other software that gave player's an unfair advantage in the game; indeed, Bansal specifically marketed the Cheat Software as undetectable by Bungie and promoted cheat features that "won't get [users] caught." (*See* Dkt. 1 at ¶¶ 48-51; *see also* Lay Decl. ¶ 4, Ex. 2.) Moreover, Bansal both had an improper purpose and used improper means with respect to his intentional interference; his improper purpose was to profit from exploiting Bungie's intellectual property and the means he used – violations of the DMCA, the Copyright Act, and other rights of Bungie – were indisputably improper. Finally, as described in Bungie's Complaint, in this Motion, and in the supporting declarations, Bansal's unlawful actions have caused significant harm to Bungie, including but not limited to the substantial costs incurred to implement, modify, and update its anti-cheat measures, and the loss of revenue and reputational harm resulting from legitimate players leaving the game in frustration at the cheating. (*See* Dkt. 1 at ¶¶ 21-23, 34-42, 62-63, 128-130; Barker Decl. ¶¶ 26-27, 32, 46-54, 56-59; Kaiser Decl. ¶¶ 4, 6-8; Guris Decl. ¶¶ 3, 57-58.)

Therefore, Bungie's well-pleaded allegations demonstrate that Bansal is liable for tortious interference with Bungie's contractual relationships with its *Destiny 2* players.

### C.    The Sum of Money at Stake in the Case

In this *Eitel* factor, the Court "considers the sum of money at stake in a case 'in relation to the seriousness of the defendant's conduct.'" *Olive v. Robinson*, No. C20-0356JLR, 2023 U.S. Dist. LEXIS 10651, *13 (W.D. Wash. Jan. 20, 2023) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002)). Thus, the factor weighs in favor of default judgment "when 'the recovery sought is proportional to the harm caused by defendant's conduct.'" *Olive*, 2023 U.S. Dist. LEXIS 10651 at *13 (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010)).

As discussed in detail below, although the total amount Bungie seeks may be considered large, the damages are proportional to the harm caused by Bansal's flagrant and willful violation of Bungie's rights.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### D.     The Possibility of a Dispute Concerning Material Facts

Where a defendant has defaulted, "there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Getty*, 2014 U.S. Dist. LEXIS 12449 at \*11-12; *see also Padded Spaces*, 2022 U.S. Dist. LEXIS 130519 at \*13. As a result, where, as here, "a plaintiff has made allegations supported by evidence and the defendant has not challenged those allegations, this factor weighs in favor of default judgment." *Getty*, 2014 U.S. Dist. LEXIS 12449 at \*12. *See also Peoples Bank v. S/Y Tempo*, No. 2:22-cv-1151, 2022 U.S. Dist. LEXIS 231210, \*8 (W.D. Wash. Dec. 23, 2022) ("Defendant's failure to present any defense supports the Court's finding that it is unlikely that genuine issues exist as to any material facts.").

### E.     Whether the Entry of Default is Due to Excusable Neglect

"In the default judgment context, there is no excusable neglect where a defendant is aware of the actions but still fails to respond." *Peoples Bank*, 2022 U.S. Dist. LEXIS 231210 at \*8. There is no evidence to suggest that Bansal's default was due to excusable neglect. To the contrary, the record reflects that Bansal was properly served via alternative means pursuant to the Court's Order, and received actual notice of this action. (*See* Dkts. 11, 18, 19, 20, 21, and 23.) For example, after Bungie served Bansal via a publicly-viewable post made to the "MediaSection" public discussion forum on the Lavicheats Website, "Lavi" (aka Bansal) posted a crude comment directed at "Bungie lawyers." (*See* Dkt. 22 at ¶ 3, Ex. 1.) Bansal also posted a message to the Lavicheats Website specifically referencing this lawsuit (and telling customers to purchase *Destiny 2* cheats at another website later tied to Bansal). (Lay Decl. ¶ 7, Ex. 6.) Therefore, this factor too weighs in favor of default judgment. *See Johnson*, 2023 U.S. Dist. LEXIS 378 at \*13 (concluding that this factor favored default judgment where the record indicated that defendant "ha[d] been served and given sufficient notice of this action"); *Padded Spaces*, 2022 U.S. Dist. LEXIS 130519 at \*13-14 (finding that this factor favored default judgment where defendant was served by alternative methods).

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

**F.      The Policy Favoring Decisions on the Merits**

"Notwithstanding the strong policy presumption in favor of a decision on the merits, where a defendant fails to appear and respond . . . , a decision on the merits is impossible and default judgment is appropriate." *Peoples Bank*, 2022 U.S. Dist. LEXIS 231210 at \*9. As courts have recognized, the existence of Rule 55 "indicates that this preference [for deciding cases on the merits], standing alone, is not dispositive because Rule 55 allows a court to issue a default judgment if defendant fails to appear and defend." *Johnson*, 2023 U.S. Dist. LEXIS 378 at \*13-14 (internal quotation marks omitted). *See also Olive*, 2023 U.S. Dist. LEXIS 10651 at \*16 ("Although there is a preference for deciding cases on the merits, this preference is not an absolute requirement.").

Here, because most, if not all, of the other factors weigh in favor of default judgment, the general policy favoring decisions on the merits does not preclude entry of default judgment. That is particularly true where, as here, the defendant indisputably was properly served and received actual notice of this lawsuit but chose not to appear and defend. *See Johnson*, 2023 U.S. Dist. LEXIS 378 at \*14 (policy did not preclude entry of default judgment where defendant failed to appear or defend and other factors favored default judgment).

**IV.     The Court Should Award Bungie $6,700,973.34 in Damages and Attorneys' Fees and Costs, and Permanently Enjoin Bansal.**

Notwithstanding Bansal's decision not to participate in this case, a large award is warranted because of Bansal's flagrant, willful conduct which has caused significant harm to Bungie. Indeed, had Bansal chosen to appear in this action (which would have permitted Bungie to obtain relevant discovery about his activities), the award undoubtedly would have been significantly larger as it is likely that the number of sales/downloads of the Cheat Software that Bungie has been able to discover through its own investigation is substantially underinclusive. Additionally, as shown in Bungie's Complaint and discussed herein, Bansal's actions constitute violations of a number of distinct laws, each with their own purposes, thereby warranting an award of damages based on each of Bungie's claims. *See Nintendo of Am., Inc. v. Dragon Pac.*

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 19

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

*Int'l*, 40 F.3d 1007, 1010-11 (9th Cir. 1994) (rejecting argument that awarding damages under both the Copyright Act and the Lanham Act constituted a double recovery as the claims were not based on the same wrongful act and the types of damages differed). Moreover, because the loss of business and reputational harm caused by Bansal's actions are effectively impossible to calculate and Bansal has shown a willingness to continue his unlawful activities, a permanent injunction is appropriate. Finally, an award of Bungie's attorneys' fees and costs is appropriate under the DMCA, the Copyright Act, and the Washington Consumer Protection Act.

     **A.**     **The Court Should Award Bungie $5,580,000 in Statutory Damages on Its DMCA Claim.**

Under the DMCA, Bungie is entitled to recover either its actual damages and any additional profits of Bansal or statutory damages. 17 U.S.C. § 1203(c)(1). Here, Bungie elects to recover statutory damages, and is therefore entitled to an award "for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A). In determining the appropriate amount of statutory damages to award within this range, courts have considered factors used in awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c), including the "profits reaped by defendant," "revenues lost to the plaintiff," and "the willfulness" of defendant's actions, as well as "the goal of discouraging wrongful conduct." *Sony Computer Entm't Am., Inc., v. Filipiak*, 406 F. Supp. 2d 1068, 1074-75 (N.D. Cal. 2005) (internal quotation marks omitted).

Here, Bansal's unlawful actions were so flagrant and willful, and his ongoing conduct demonstrates a willingness to continue with his illegal activities, as to warrant a statutory damage award of at least $2,000 for each of the 2,790 Cheat Software for *Destiny 2* that Bansal's own website admitted were downloaded, for a total of $5,580,000. (*See* Guris Decl. ¶ 9, Ex. 2.) *See also Dish Network, L.L.C. v. SatFTA*, No. 5:08-cv-01561 JF (PSG), 2011 U.S. Dist. LEXIS 25038, *20 (N.D. Cal. Mar. 9, 2011) (concluding that precedent established that "violations of the DMCA should be construed on a per-download basis"); *Sony*, 406 F. Supp. 2d at 1074

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

(concluding that DMCA authorized separate award of statutory damages for each device sold). An award of $2,000 per Cheat Software for *Destiny 2* distributed by Bansal is less than the statutory maximum, is consistent with awards in other cases, and is justified by the nature and extent of Bansal's actions and the harm caused to Bungie. *See Philips N. Am. LLC v. KPI Healthcare, Inc.*, No. SACV 19-1765 JVS (JDEx), 2021 U.S. Dist. LEXIS 168206, *1, 20-21 (C.D. Cal. Sept. 1, 2021) (finding that "the acts of circumvention [were] severe," awarding $2,000 per device under the DMCA where defendant provided unlicensed software that incorporated modification of plaintiff's systems' software).

   For example, the number of sales/downloads that Bungie was able to identify (based on Bansal's own admission) are likely only a fraction of the circumvention products (*e.g.*, the Cheat Software for *Destiny 2*) that Bansal trafficked in, both before Bungie filed the Complaint in this action and after, when Bansal moved his unlawful activities to other websites (while recommending on his Lavicheats Website that customers instead purchase the cheats for *Destiny 2* from one of those websites). (*See* Lay Decl. ¶¶ 7-10, Exs. 6-9.) Moreover, any uncertainty as to the number of sales/downloads of the Cheat Software for *Destiny 2* is a result of Bansal's decision not to participate in this case. *See, e.g.*, *Sony*, 406 F. Supp. 2d at 1075 (finding the estimate of the devices that violated the DMCA "not . . . exact" but reasonable and "any uncertainty of the exact amount sold is a result of [the defendant's] own conduct"); *see also Reeves*, 2010 U.S. Dist. LEXIS 85560 at *8 (finding that, although plaintiff could not prove definitively the number of times defendant provided users with circumvention products, it was reasonable to conclude it did so at least once and the court "must draw all reasonable inferences in Plaintiff's favor on account of Defendant's failure to participate in the litigation").

   Additionally, the requested statutory damage award, while large, does not fully account for the harm Bungie has suffered as a result of Bansal's actions. Specifically, Bungie has spent conservatively $2,000,000 on game security staffing and software during the time Bansal offered his *Destiny 2* cheats, which does not account for the revenue Bungie lost as a result of player attrition caused by frustration with cheaters using cheats like Bansal's Cheat Software for

*Destiny 2*. (*See* Barker Decl. ¶¶ 26-27, 32, 46-54, 56-59.)

Moreover, the severity of Bansal's unlawful actions support the requested award. The Cheat Software for *Destiny 2* exists only to infiltrate and modify Bungie's copyrighted works in order to give players using the cheat software an unfair advantage. Indeed, the Lavicheats Website exists solely to sell cheat software for a large number of game franchises (*see, e.g.*, Lay Decl. ¶ 6, Exs. 4, 5); therefore, notwithstanding Bansal's claimed cessation of sales for the Cheat Software for *Destiny 2* on the Lavicheats Website, his sale and distribution of other similar cheat software for other video game properties continues unabated. *See, e.g.*, *Reeves*, 2010 U.S. Dist. LEXIS 85560 at *7-8 (noting, in awarding more than $85 million in DMCA statutory damages, that the defendant's "website exists primarily to enable Defendant's users to access Plaintiff's copyrighted works and circumvent Plaintiff's protective measures"); *Sony Computer Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 967 (N.D. Cal. 2006) (concluding that defendant's DMCA violations were willful notwithstanding his decision to stop selling the circumvention device at issue as "he offers no credible explanation for his continued trafficking in other circumvention devices"). *See also Bossland*, 2017 U.S. Dist. LEXIS 58185 at *14 (describing cheat seller's business as "parasitic" and stating that it "pointedly undermin[es] [the game maker's] brand and profitability"). Nor can there be any dispute that Bansal knew his actions were unlawful; a major promotion point of the Cheat Software was that they were allegedly undetectable by Bungie's anti-cheat measures and Bansal maintained a status page indicating whether a cheat was "Safe to Use". (*See* Dkt. 1 at ¶¶ 50-51; *see also* Lay Decl. ¶ 4, Ex. 2.) Moreover, Bansal's statements and actions since receiving notice of the Complaint in this action demonstrate that, absent a significant damage award, Bansal is unlikely to cease his unlawful actions. For example, in response to the post on the Lavicheats Website forum serving Bansal with the Complaint, Bansal (aka Lavi) responded that "Bungie lawyers you can suck my nuts!" (Dkt. 22-1.) More tellingly, after being served, Bansal purported to stop selling the Cheat Software for *Destiny 2* on the Lavicheats Website but recommended that customers purchase those cheats from the Cobracheats website, which Bungie's investigation suggests was also

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 22

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

owned and/or operated by Bansal. (*See* Lay Decl. ¶ 7, Ex. 6.)

Therefore, while the requested award of damages is large, "it is both consistent with Congressional intent and necessary to discourage wrongful conduct by other potential retailers who might be tempted to engage in what might otherwise appear to be a lucrative business selling illegal contravention devices." *Sony*, 406 F. Supp. 2d at 1075-76.

### B. The Court Should Award Bungie $300,000 in Statutory Damages on Its Copyright Infringement Claims.

As relevant here, the Copyright Act also permits a successful plaintiff to recover statutory damages of not less than $750 or more than, in the case of willful infringement, $150,000 per infringed work. 17 U.S.C. § 504(c). Bungie seeks an award of $300,000, representing an award of $150,000 for each of the two infringed copyrighted works primarily at issue in this case. Such an award is appropriate in light of Bansal's role in willfully inducing, contributing to, and facilitating the infringement of Bungie's copyrighted works.

The Court has wide discretion in setting the amount of statutory damages under the Copyright Act. *Nintendo*, 40 F.3d at 1010. Statutory damages are particularly appropriate in default judgment cases such as this "because the information needed to prove actual damages is within the infringers' control and is not disclosed." *FameFlynet, Inc. v. Feel the Piece, LLC*, No. CV 17-5406 FMO (GJSx), 2018 U.S. Dist. LEXIS 28031, *9 (C.D. Cal. Feb. 21, 2018) (internal quotation marks omitted). Moreover, on default, willful infringement, as alleged here (*see* Dkt. 1 at ¶¶ 13, 47-51, 56, 61, 72, 83, 86, 94, 97), is taken as true. *See, e.g.*, *Crim. Prods., Inc. v. Evans*, No. 16-cv-1647RAJ, 2018 U.S. Dist. LEXIS 58313, *2 (W.D. Wash. Apr. 4, 2018) (finding that on default, "Plaintiff's allegation that Defendant's infringement was willful is also taken as true"); *FameFlynet*, 2018 U.S. Dist. LEXIS 28031 at *9 ("A court may infer willfulness even where a defendant defaults."); *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (stating that on entry of default, "all factual allegations in the complaint are deemed true, including the allegation of [defendant's] willful infringement").

Here, awarding the maximum statutory damages for willful infringement would serve one

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

of the purposes of such damages of penalizing the infringer and deterring future violations. *See*

*Nintendo*, 40 F.3d at 1011. In addition to the willful infringement described in the Complaint,

Bansal has given no indication that he intends to cease his infringing activities either as to

Bungie's copyrighted works or the games owned by other companies for which Bansal continues

to sell cheat software. Moreover, as discussed above, even after Bansal received notice of this

lawsuit, he professed to cease his exploitation of Bungie's intellectual property but instead

simply moved his operation to one or more other websites. Therefore, both Bansal's willful

infringement and the deterrent purpose of statutory damages warrant an award of the maximum

amount for infringement of Bungie's two copyrighted works. *See, e.g., Olaes Enters., Inc. v.*

*Richard Trading, Inc.*, No. 07CV922 WQH (BLM), 2008 U.S. Dist. LEXIS 135157, *8-9 (S.D.

Cal. Jan. 15, 2008) (finding that, where there was willful infringement and defendant had not

cooperated in the case, "a significant [statutory] damages award will provide a deterrent effect").

C.    **The Court Should Award Bungie Bansal's Profits in the Amount of $579,270 on Its Trademark Claims.**

The Lanham Act provides that a prevailing plaintiff may recover, as relevant here,

damages in the amount of the defendant's profits. *See craigslist, Inc. v. Kerbel*, No. C-11-3309

EMC, 2012 U.S. Dist. LEXIS 108573, *51 (N.D. Cal. Aug. 2, 2012); *see also*

15 U.S.C. § 1117(a). "Pursuant to § 1117(a), sales are equivalent to profits absent evidence from

the defendant as to costs or other deductions from said profits." *craigslist*, 2012 U.S. Dist.

LEXIS 108573 at *51 (awarding defendant's profits to craigslist on default judgment).

Here, Bungie has provided evidence, consisting of a posting by Bansal on his Lavicheats

Website, that the Delta version of the Cheat Software for *Destiny 2* was downloaded 962 times

while the Premium version was downloaded 1,828 times. (*See* Guris Decl. ¶ 9, Ex. 2.) As a

customer would be required to purchase the cheat before being able to download it, it is

reasonable to infer that each of these downloads represented a sale of the Cheat Software for

*Destiny 2*. The Delta version of the Cheat Software for *Destiny 2* was available for purchase for

$9.99 or $129, depending on the length of the license. (Lay Decl. ¶ 3, Ex. 1.) Multiplying those

price points by the number of Delta downloads, Bansal's profits are in the range of $9,610.38 -

$124,098. The price points for the Premium cheat software for *Destiny 2* were $19.90, $54,

$129, $139, and $249, again depending on the length of the license. (Lay Decl. ¶ 3, Ex. 1.)

Multiplying each of those price points by the number of Premium downloads, Bansal's profits

are in the range of $36,377.20 - $455,172.

Bungie requests an award of Bansal's profits totaling $579,270, which represents the

highest end of the ranges of profits (*e.g.*, $124,098 as to the Delta version plus $455,172 as to the

Premium version). An award at the higher range of profits is appropriate given Bansal's flagrant

violation and exploitation of Bungie's intellectual property, including the Destiny Marks.

Moreover, Bansal received actual notice of this litigation but chose not to participate in the case,

thereby depriving Bungie of any opportunity to obtain discovery to determine the true extent of

his infringement and the profits he generated from his unlawful activities. As a result, Bungie

requests that it be awarded Bansal's profits in the amount of $579,270 under the Lanham Act.

> **D.    The Court Should Award Bungie its Attorneys' Fees and Costs Incurred To-Date, Plus Fees and Costs Incurred After the Filing of This Motion**

The Copyright Act, the DMCA, and the CPA each permit the recovery of Bungie's

attorneys' fees and costs in this action. *See* 17 U.S.C. § 505 (the court in its discretion "may

allow the recovery of full costs" and "may also award a reasonable attorney's fee to the

prevailing party as part of the costs"); 17 U.S.C. § 1203(b)(5) (same); RCW 19.86.090 (plaintiff

may recover "the costs of the suit, including a reasonable attorney's fee"). Here, an award of

Bungie's attorneys' fees and costs in this action is warranted given Bansal's flagrant and willful

exploitation of Bungie's intellectual property at Bungie's expense and other violations of

Bungie's rights.

Section 505 of the Copyright Act "grants courts wide latitude to award attorney's fees

based on the totality of circumstances in a case." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S.

197, 203 (2016). Factors such as frivolousness, motivation, objective unreasonableness, and

"'the need in particular circumstances to advance considerations of compensation and

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

deterrence'" all may be relevant to the Court's decision to award fees. *Id.* at 202 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n.19 (1994)). But not all factors need to be met for a court to award fees. *EMI April Music, Inc. v. Lanes, Inc.*, No. CV-08-162-EFS, 2009 U.S. Dist. LEXIS 141318, *13 (E.D. Wash. Mar. 20, 2009). Similarly, courts have found that "[w]here, as here, willful violations of the DMCA are present, . . . an award of costs and attorneys' fees is appropriate." *Dish Network*, 2011 U.S. Dist. LEXIS 25038 at *21-22.

Here, an award of fees and costs is appropriate. As shown herein, Bungie's claims are not frivolous; to the contrary, they are deemed admitted based on the well-pleaded allegations in the Complaint. Bungie's motivation in protecting its valuable intellectual property and the quality of gameplay for its legitimate players is fully justified given the significant harm caused by those like Bansal involved in, and unfairly profiting from, the parasitic cheat software industry. In contrast, "[t]he position of [Bansal] is deemed objectively unreasonable given [his] failure to advance any factual or legal arguments against Plaintiff's claims." *Crim. Prods.*, 2018 U.S. Dist. LEXIS 58313 at *4. Moreover, in circumstances such as this where the defendant's conduct was willful and unreasonable, courts have found that an award of attorneys' fees and costs under the Copyright Act and the DMCA are appropriate. *See, e.g.*, *Philips N. Am.*, 2021 U.S. Dist. LEXIS 168206 at *22-24 (awarding attorneys' fees and costs under the DMCA and the Copyright Act where actions enabling unlicensed software and engaging in circumvention "constitutes willful and unreasonable conduct that the Court believes it is appropriate to deter," defendant's conduct was motivated by an intent to profit from plaintiff's copyrighted works, and defendant's failure to participate in discovery prevented plaintiff "from understanding the full scope of the infringement"); *Sony*, 457 F. Supp. 2d at 967 (finding award of attorneys' fees and costs under the DMCA appropriate where defendants' violations were willful).

As described in the declaration of Bungie's counsel, the attorneys' fees incurred in connection with this action were reasonable and necessary, both as to the rates charged by Bungie's attorneys and the amounts incurred using those rates. Similarly, the costs, including expert costs, were necessary to Bungie's efforts to prosecute this case. (Lay Decl. ¶¶ 11-20,

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 26

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

1  Exs. 10-13; *see also* Barker Decl. ¶ 60.) As a result, Bungie requests an award of its attorneys'

2  fees totaling $183,850.71[2] and its costs totaling $57,852.63, for a combined award of

3  $241,703.34 for attorneys' fees and costs.

4       **E.     The Court Should Issue A Permanent Injunction Against Bansal**

5       "As a general rule, a permanent injunction will be granted when liability has been

6  established and there is a threat of continuing violations." *MAI Sys., Corp. v. Peak Computer,*

7  *Inc.*, 991 F.2d 511, 520 (9th Cir. 1993). The Copyright Act, the DMCA, the Lanham Act, and the

8  CPA each grant the Court authority to grant injunctive relief. *See* 17 U.S.C. § 502(a);

9  17 U.S.C. § 1203(b)(1); 15 U.S.C. § 1116; RCW 19.86.090. A permanent injunction is

10  appropriate where the plaintiff demonstrates: "(1) that it has suffered an irreparable injury;

11  (2) that remedies available at law, such as monetary damages, are inadequate to compensate for

12  that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

13  remedy in equity is warranted; and (4) that the public interest would not be disserved by a

14  permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Each of

15  these factors favor granting the permanent injunction Bungie seeks.

16       As to the overlapping first and second factors, the admitted allegations in the Complaint

17  establish that Bansal's trafficking in circumvention devices, infringement of Bungie's copyrights

18  and trademarks, and tortious interference with Bungie's contractual relationships with its players,

19  have caused irreparable harm to Bungie's goodwill and reputation with its existing players and

20  potential players of *Destiny 2*. (*See* Dkt. 1 at ¶¶ 21-23, 62-63; *see also* Barker Decl. ¶¶ 46-54, 56-

21  59, Ex. 6.) Courts have found a similar "threat of the loss of prospective customers, goodwill, or

22  reputation" sufficient irreparable harm to support the grant of a permanent injunction. *Getty*

23  *Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 U.S. Dist. LEXIS 37611, *16

24  (W.D. Wash. Mar. 20, 2014) (internal quotation marks omitted); *see also Edwards Vacuum, LLC*

25  *v. Hoffman Instrumentation Supply, Inc.*, 538 F. Supp. 3d 1132, 1146 (D. Or. 2021) (identifying

26
27      [2] The total amount of attorneys' fees requested was calculated based on the lodestar method, calculated by multiplying the number of hours counsel for Bungie reasonably expended on the litigation by counsel's standard, reasonable hourly rates. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

"damage to reputation, goodwill, or relationships with customers" as the types of harm courts have "[u]nsurprisingly" found to be irreparable for purposes of injunctive relief). Moreover, such intangible harms are difficult if not impossible to fully quantify, demonstrating both irreparable harm and that Bungie has no adequate remedy at law. *See Getty*, 2014 U.S. Dist. LEXIS 37611 at *16-17; *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable[.]").

Additionally, courts have found that a remedy at law may be inadequate if it cannot be collected due to insolvency or "if obtaining the remedy would require a multiplicity of suits" such as where infringements continue after the lawsuit is filed. *Getty*, 2014 U.S. Dist. LEXIS 37611 at *17-18 (internal quotation marks omitted). Such considerations apply here where Bansal is located outside the United States (in India) and appears to have continued his unlawful activities since Bungie filed its Complaint in this action, merely moving his operation to one or more other websites. (*See* Lay Decl. ¶¶ 7-10, Exs. 6-9.) Moreover, because of Bansal's continuation of his unlawful actions after receiving notice of this lawsuit and his refusal to participate in this case, "there can be no assurances that [he] will no longer engage in the conduct at issue in this case." *Amazon Content Servs. LLC v. Kiss Library*, No. C20-1048 MJP, 2021 U.S. Dist. LEXIS 242489, *17 (W.D. Wash. Dec. 17, 2021); *see also Nintendo of Am., Inc. v. Storman*, No. CV 19-7818-CBM-(RAOx), 2021 U.S. Dist. LEXIS 148119, *23 (C.D. Cal. Aug. 5, 2021) (finding that evidence demonstrating "a threat of continued infringement based on Defendant's representations that he may relaunch his website which previously contained Plaintiff's copyrighted games" demonstrated irreparable harm); *Sony Interactive Entm't LLC v. Scales*, No. EDCV 18-2141 JGB (KKx), 2019 U.S. Dist. LEXIS 239865, *20 (C.D. Cal. Mar. 18, 2019) (defendant's "failure to appear in defending this action indicates a threat of continuing violations" which supported a finding of irreparable harm).

As to the third factor, the balance of hardships, it favors Bungie "because an injunction will only bar Defendant from continuing to engage in unlawful activity." *Sony*, 2019 U.S. Dist.

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

LEXIS 239865 at *20-21; *see also Eve Nev., LLC v. Derbyshire*, No. 21-0251-LK, 2022 U.S.

Dist. LEXIS 17273, *22 (W.D. Wash. Jan. 31, 2022) (finding that the defendant "would suffer

no injury other than refraining from her infringing conduct"); *Nintendo*, 2021 U.S. Dist. LEXIS

148119 at *24 (stating that "any hardship from enjoining Defendant from infringing Plaintiff's

copyrights and trademark rights is irrelevant in determining whether to issue an injunction");

*Getty*, 2014 U.S. Dist. LEXIS 37611 at *19 (finding that the balance of hardships favored

plaintiff where there was no evidence that defendants "have a legitimate business purpose for

their infringement"). Indeed, as discussed above, Bansal's entire business is built on infringing

and exploiting the intellectual property of Bungie and other video game developers and

publishers. Thus, in the balance of hardships, there simply is no contest. *See Blizzard Entm't Inc.

v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1018 (C.D. Cal. 2013) (finding that equities

"weigh[ed] strongly in favor" of an injunction where the defendants' "business was built entirely

upon the very intentional interference with Blizzard's contracts that the present claims seek to

redress").

 Finally, the fourth factor – the public interest – supports granting a permanent injunction.

Courts routinely find that enforcement of statutes, including the Copyright Act and the DMCA

specifically, is in the public's interest. *See, e.g.*, *Eve*, 2022 U.S. Dist. LEXIS 17273 at *22

(stating that preventing further copyright infringement "undoubtedly serves the public interest");

*Nintendo*, 2021 U.S. Dist. LEXIS 148119 at *25 ("The public interest is served by upholding

rights under the Copyright Act and Lanham Act."); *Getty*, 2014 U.S. Dist. LEXIS 37611 at *19-

20 ("Courts usually find that the public interest is . . . served when the rights of copyright holders

are protected against acts likely constituting infringement.") (internal quotation marks omitted);

*Dish Network*, 2011 U.S. Dist. LEXIS 25038 at *23 (finding that permanent injunction in

connection with DMCA claim was appropriate in part because it "would do no more than require

Defendant to comply" with the law and "the public has an interest in the enforcement

of . . . statutes") (internal quotation marks omitted).

 As a result, all of the factors weigh heavily in favor of granting the requested permanent

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

injunction, which merely seeks to enjoin Bansal from continuing his unlawful exploitation of

Bungie's intellectual property and other violations of Bungie's rights as described herein.

## CONCLUSION

For the foregoing reasons, Bungie requests that default judgment be entered against

Defendant Kunal Bansal in the total amount of $6,700,973.34, inclusive of damages and

attorneys' fees and costs, and that a permanent injunction be entered against Bansal as described

in the proposed order submitted herewith.

Dated this 17th day of February, 2023.          Respectfully submitted,

FOCAL PLLC

By: *s/ Stacia N. Lay*
    *s/ Venkat Balasubramani*
    Stacia N. Lay, WSBA #30594
    Venkat Balasubramani, WSBA #28269
    900 1st Avenue S., Suite 201
    Seattle, Washington 98134
    Tel: (206) 529-4827
    Fax: (206) 260-3966
    Email: stacia@focallaw.com
    Email: venkat@focallaw.com

Attorneys for Plaintiff Bungie, Inc.

MOTION FOR DEFAULT JUDGMENT AGAINST BANSAL
(Case No. 2:21-cv-1111-TL) – 30

**focal** PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966