UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BUNGIE, INC., a Delaware corporation,<br><br>      Plaintiff,<br> v.<br><br>KUNAL BANSAL, an individual, d/b/a LAVICHEATS.COM,<br><br>      Defendant. | CASE NO. 2:21-cv-01111-TL<br><br>ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |

This matter comes before the Court on Plaintiff Bungie, Inc.'s Motion for Default Judgment against Defendant Kunal Bansal (Dkt. No. 48).[1] Having reviewed the Motion and all supporting materials, the Court GRANTS the Motion in part, ENTERS default judgment, and permanently ENJOINS Bansal on the terms specified below.

---

[1] The Court notes that Bansal is the only remaining defendant in this action, given Bungie's voluntary dismissal of all claims against the "Doe" defendants named in the complaint. *See* Dkt. No. 17.

I. **BACKGROUND**

Operating out of Bellevue, Washington, Bungie develops, distributes, and owns the intellectual property rights to a video game called "Destiny 2." Dkt. No. 1 ¶¶ 1, 4. Bungie alleges that Bansal, a resident of India, operates a website, Lavicheats.com, through which he advertised and sold cheat software that "hacks" the Destiny 2 software to allow players a competitive advantage against other players in violation of Bungie's software license agreement ("LSLA") that binds all Destiny 2 users. *Id*. ¶¶ 5, 43; Dkt. No. 47 ¶¶ 33–36; Dkt. No. 50 ¶ 4; Dkt. No. 51 ¶ 2. Bansal sold two different variations of Destiny 2 cheating software—the "Delta" cheat and a more extensive cheat called the "Ring-1" cheat (collectively the "Bansal Cheats"). Dkt. No. 50 ¶¶ 6–7. Bungie claims that Bansal did not develop the Bansal Cheats, but acted as a reseller. *Id*. ¶ 8. Bungie alleges that the Bansal Cheats infringe on four copyrights to the computer software and audiovisual works and screen displays in Destiny 2 and its "expansions": (1) Registration No. TX 8-933-655; (2) Registration No. TX 8-933-658; (3) Registration PA 2-282-670; and (4) Registration PA 2-280-030. Dkt. No. 1 ¶ 24. Bungie also alleges that Bansal has used without permission various trademarks associated with the Destiny 2 franchise. *Id*. ¶¶ 25 (listing five trademarks), 52–53. Bungie alleges that the Bansal Cheats contain measures intended to avoid, bypass, and impair Bungie's technological measures that control access to the copyrighted works at issue in this case and which violate the terms of the LSLA. Dkt. No. 1 ¶¶ 31–42, 50, 54–61.

Bungie asserts the following claims against Bansal: (1) violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(2); (2) contributory copyright infringement; (3) vicarious copyright infringement; (4) trademark infringement; (5) false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a); (6) violations of the Washington Consumer Protection Act ("CPA"); (7) tortious interference with contractual relationship; and (8) unjust enrichment. Dkt. No. 1 ¶¶ 64–135. Bungie seeks entry of default

judgment on all but the unjust enrichment claim and asks for judgment to be entered in the amount of $6,700,973.34. Dkt. No. 48 at 38. This represents the sum of: (1) $5,580,000 in statutory damages under the DMCA, *id.* at 28–31; (2) $300,000 in statutory damages based on the willful infringement of two copyrighted works, as permitted under the Copyright Act, 17 U.S.C. § 504(c), *id.* at 31–32; (3) $579,270 in damages as permitted by the Lanham Act, 15 U.S.C. § 1117(a), *id.* at 32–33; (4) attorney fees of $183,850.71; and (5) costs, including expert fees, totaling $57,852.63. *Id.* at 33–35. Bungie also asks for entry of a permanent injunction barring Bansal from engaging in future or further conduct that forms the basis of its Copyright Act, Trademark Act, and DMCA claims in this action. *Id.* at 35–38.

In support of the requested damages, Bungie alleges that notwithstanding its anti-cheating efforts, the Bansal Cheats have caused it harm by diminishing the enjoyment of the game for those not cheating and reducing its potential revenue from in-game sales to players. Dkt. No. 1 ¶¶ 62–63. Bungie's Deputy General Counsel, James Barker, also explains the nature of its anti-cheat circumvention efforts and the "minimum of $2,000,000 on game security staffing and software" that it has expended to combat the Bansal Cheats and other cheating devices of Destiny 2. Dkt. No. 47 ¶¶ 1, 17–32, 47–59. Bungie has also provided evidence that the Delta cheat was downloaded 962 times, while the Ring-1 cheat was downloaded 1,828 times. Dkt. No. 50 ¶ 9; Dkt. No. 50-2. Bungie states that in order to download either cheat, the user would have had to purchase the cheat from Bansal at prices that varied depending on the length of the license and the cheat acquired. Dkt. No. 48 at 24. Bungie calculates Bansal's profits to range between $9,610.38 and $124,098 for the Delta cheat and between $36,377.20 to $455,172 for the Ring-1 cheat. Dkt. No. 51 ¶ 3; Dkt. No. 51-1; Dkt. No. 48 at 25. Bungie seeks an award of the higher range of these profits as damages for its Trademark claims. Dkt. No. 48 at 25.

## II. DISCUSSION

### A. Legal Standard

The Court has already found Bansal in default. Dkt. No. 29. After entry of default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b). This determination is discretionary. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In performing this analysis, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (quotation and citation omitted). And "[t]he district court is not required to make detailed findings of fact." *Id*.

### B. Jurisdiction

Before entering default judgment, the Court must assure itself that it has subject matter jurisdiction and personal jurisdiction.

There is little doubt that the Court has subject matter jurisdiction over Bungie's claims. Bungie brings claims under various federal laws, which fall within the Court's original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). The Court has supplemental jurisdiction over Bungie's state-law claims pursuant to 28 U.S.C. § 1367(a).

The Court now turns to the question of whether it has personal jurisdiction over Bansal, who is a nonresident, pursuant to Federal Rule of Civil Procedure 4(k)(2), the federal long-arm

statute. Under Rule 4(k)(2), personal jurisdiction may be established over a defendant if the claims arise under federal law and: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

To measure whether the exercise of personal jurisdiction is consistent with the Constitution, the Court engages in a "due process analysis [that] is nearly identical to the traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1039 (9th Cir. 2022) (citation and quotation omitted). To satisfy due process in this context, Bungie must demonstrate that: (1) the nonresident defendant has either purposefully directed his activities at the United States or purposefully availed himself of the privilege of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see* Dkt. No. 48 at 5–8 (arguing that personal jurisdiction is properly analyzed under the "purposeful direction" test of specific jurisdiction). To establish "purposeful direction," the Court applies the three-part "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984), which requires that the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quotation and citation omitted). If Bungie satisfies the first two *Schwarzenegger* elements, the burden shifts to Bansal to make a compelling case that the exercise of jurisdiction would not be reasonable. *Id.* at 802.

The Court is satisfied that Bungie satisfies the requisite elements of Rule 4(k)(2). Bungie pursues claims under federal law against a Bansal, who is outside of any state court's general jurisdiction. And the Court finds that the exercise of personal jurisdiction comports with the Constitution based upon the three *Schwarzenegger* factors.

First, Bansal purposefully directed his activities at the United States. All three elements of the "effects" test are satisfied. One, Bansal used his Lavicheats Website to advertise the Bansal Cheats. Two, Bansal directed the Lavicheats Website to consumers in the United States by using English on the website, displaying prices in U.S. Dollars, and providing product assistance in English. *See* Dkt. No. 51 ¶ 6; Dkt. Nos. 51-4, 51-5; Dkt. No. 40 ¶¶ 15–22; Dkt. Nos. 40-8–40-12. And while Bansal appears to have advertised and sold the cheats to consumers worldwide, he did not place any restrictions on the ability of United States residents to purchase the cheats. Bansal also targeted a game developed by Bungie in the United States for which Bungie has valid U.S. intellectual property rights. Three, it was foreseeable that Bansal's marketing and sales of the Bansal Cheats would harm Bungie in the United States—where it is headquartered.

Second, Bungie's claims arise out of Bansal's forum-based activities. The Ninth Circuit "relies on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Bungie has satisfied this by showing that its claims would not exist but for Bansal's use of Bungie's U.S. intellectual property and decision to target consumers of Destiny 2 in the United States.

Third, because Bungie satisfied the first two prongs of personal jurisdiction under Rule 4(k)(2), the burden shifts to Bansal to show personal jurisdiction is not reasonably exercised here. By failing to appear in this matter, Bansal has conceded that the exercise is reasonable. But

ORDER ON PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT - 6

for the sake of completeness, the Court has considered this factor and finds that the exercise of personal jurisdiction is reasonable. The Court does so by balancing the following factors:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002). The balance of these factors shows that that the exercise of personal jurisdiction is reasonable. Bansal purposefully directed his activities at the Untied States. There is no evidence of the burden on Bansal in defending himself in this Court or conflicts with the sovereignty of a foreign state. The United States has an interest in making sure that Bungie's valid intellectual property rights are protected, and this forum can efficiently resolve the conflict. And Bungie has an interest in obtaining convenient and effective relief in this Court where there are no alternative fora identified. Accordingly, the Court finds the exercise of personal jurisdiction to be reasonable.

C.   ***Eitel* Factors Favor Default Judgment**

The Court reviews the *Eitel* factors to assess whether default judgment should be entered and in what specific amounts. The seven *Eitel* factors weigh in favor of entry of default judgment in Bungie's favor. But the Court finds that the judgment shall not be entered as to all claims or in the full amount Bungie requests.

    1.   **Factor One: Prejudice to Bungie**

Without entry of default judgment, Bungie will be prejudiced. Bungie has attempted to litigate this case and vindicate its rights under federal and state law against Bansal. Bansal has failed to appear or participate in this litigation despite being personally served. Bungie faces

prejudice by not being able to obtain complete relief on its claims against Bansal without entry of default judgment. This factor weighs in favor of granting default judgment.

### 2. Factors Two and Three: Merits of Bungie's Claims and Sufficiency of Complaint

Bungie has demonstrated the merit of its claims and the sufficiency of the amended complaint as to all but the CPA and unjust enrichment claims. The Court reviews each claim.

#### a. DMCA

The DMCA prohibits the circumvention of any technological measure that effectively controls access to a protected work and grants copyright owners the right to enforce that prohibition. 17 U.S.C. § 1201(a). Bungie may prove its claim under § 1201 by demonstrating that Bansal: "(1) traffic[ked] in (2) a technology or part thereof (3) that is primarily designed, produced, or marketed for, or has limited commercially significant use other than (4) circumventing a technological measure (5) that effectively controls access (6) to a copyrighted work." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 953 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011). Here, Bungie has provided allegations and evidence that it has substantial measures to protect its copyrighted materials. Dkt. No. 1 ¶¶ 34–42, 66; Dkt. No. 47 ¶¶ 19–21, 23–27, 29–31; Dkt. No. 49 ¶¶ 4, 6–8; Dkt. No. 50 ¶¶ 22–26. And Bungie has shown that Bansal sold the Bansal Cheats that were designed to circumvent Bungie's technological measures to protect its copyrighted works in violation of § 1201(a). Dkt. No. 1 ¶¶ 31–42, 50, 54–61, 67; Dkt. No. 47 ¶¶ 26–27, 31–32, 38, 56; Dkt. No. 49 ¶¶ 6–18; Dkt. No. 50 ¶¶ 23, 27–33, 56. The Court finds that entry of default judgment on these claims is proper.

### b.  *Secondary Copyright Infringement*

"To establish direct copyright infringement, the [plaintiff] must (1) show ownership of the allegedly infringed material and (2) demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citation and quotation omitted). "Contributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794–95 (9th Cir. 2007). "[A] defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Id*. at 795 (citation and quotation omitted). "Vicarious infringement is a concept related to, but distinct from, contributory infringement." *Id*. at 802. "To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Id*. And "[t]o prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (citation and quotation omitted).

Bungie has sufficiently alleged both contributory and vicarious copyright infringement. First, Bungie has alleged that Bansal marketed, sold, and distributed the Bansal Cheats that he reasonably knew infringed on Bungie's copyrights related to Destiny 2. Dkt. No. 1 ¶¶ 81–82. And Bansal helped induce the infringing conduct by aiding consumers of the Bansal Cheats to install and use the software. *Id*. These allegations suffice to show contributory infringement. Second, Bungie has shown vicarious copyright infringement. Bungie has alleged that Bansal

received financial benefit from those users who purchased the Bansal Cheats that infringed on Bungie's copyrights related to Destiny 2. Bansal maintained control over the Bansal Cheats, as demonstrated by the fact that he removed them from his website after receiving notice of this lawsuit and then moved the cheats to another website. *See* Dkt. No. 51 ¶¶ 3, 7; Dkt. No. 51-6.

The Court also finds the allegations suffice to show that the copyright infringement here was willful, given allegations that Bansal knew the cheats violated and infringed on Bungie's copyrights. Dkt. No. 1 ¶¶ 13, 47–51, 56, 61, 72, 83, 86, 94, 97. The Court finds that entry of default judgment on these claims is proper.

### c. *Trademark Infringement & False Designation of Origin*

To prevail on a trademark infringement claim, Bungie must establish (1) a protected trademark and (2) the use of that trademark by a party accused of infringing on the trademark is likely to cause consumer confusion. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). Federal registration of a mark provides prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the mark is protectable. *See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927–28 (9th Cir. 2005).

To prevail on its claim of false designation of origin, Bungie must show that "(1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts." *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015).

Bungie has provided sufficient allegations to support both claims. First, it has provided evidence that it has valid, protected trademarks that Bansal has used to advertise and sell the Bansal Cheats in interstate commerce. *See* Dkt. No. 1 ¶¶ 25–27, 52–53; Dkt. No. 1-5; Dkt. No. 51 ¶ 5; Dkt. No. 47 ¶ 12; Dkt. No. 47-3. Second, Bungie has alleged that Bansal's unauthorized use of one or more of Bungie's trademarks in advertising and selling the Bansal Cheats is likely to have deceived customers and potential customers regarding the origin, affiliation, association, connection or endorsement of Bansal's products. *See* Dkt. No. 1 ¶¶ 101–102, 107–108. The Court finds that entry of default judgment on these claims is proper.

        **d.**      ***CPA***

To prevail on its CPA claim, Bungie must establish "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.3d 531, 535 (1986)). "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (2013).

The Court remains unconvinced that Bungie has alleged a valid CPA claim. Specifically, it has not provided evidence of an unfair or deceptive act that had the capacity to deceive a substantial portion of the public. The Bansal Cheats was advertised and sold as an express means to allow players to cheat in the Destiny 2 game. There are no cogent allegations or evidence that individuals who purchased the Bansal Cheats were deceived or that they did not intend to purchase a cheat-enabling software. Even if there were sufficient allegations that purchasers of the Bansal Cheats were deceived to believe Bungie endorsed the cheats, this conduct has not

been alleged to have caused any damage or injury to Bungie. The Court rejects Bungie's request for entry of default judgment on this claim.

### e. *Tortious Interference with Contractual Relationship*

"A claim for tortious interference with a contractual relationship or business expectancy requires five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (1997). "Intentional interference requires an improper objective or the use of wrongful means that in fact cause injury to the person's contractual relationship." *Id*.

Bungie has sufficiently alleged a claim that Bansal tortiously interfered with contractual relationships Bungie maintains with Destiny 2 users. Players of Destiny 2 must agree to Bungie's LSLA, which contains a valid and enforceable contract between Bungie and the players that forbids the use of cheating software like the Bansal Cheats. *See* Dkt. No. 1 ¶¶ 31–33, 121–123; Dkt. No. 47 ¶¶ 13–16; Dkt. No. 47-4. Bansal was aware of the LSLA and that the Bansal Cheats would violate the terms of the LSLA, as evidence by statements on his website that users of the Bansal Cheats would not get caught by Bungie. Dkt. No. 1 ¶¶ 48–51; Dkt. No. 51 ¶ 4; Dkt. No. 51-2. Bansal also had an improper purpose in selling the Bansal Cheats—to help Destiny 2 users cheat in the game and violate the LSLA and infringe on Bungie's intellectual property rights. And Bungie has shown evidence of harm, including the loss of revenue and reputational damages. Dkt. No. 1 ¶¶ 21–23, 34–42, 62–63, 128–130; Dkt. No. 47 ¶¶ 26–27, 32, 46–54, 56–59; Dkt. No. 49 ¶¶ 4, 6–8; Dkt. No. 50 ¶¶ 3, 57–58. The Court finds that entry of default judgment on these claims is proper.

### 3. Factor Four: Sum of Money at Stake

Given the substantial sums that are at stake and the seriousness of the alleged misconduct, the Court finds that this *Eitel* factor favors entry of default judgment.

### 4. Factor Five: Possibility of Dispute of Material Facts

The Court finds little possibility that the core, material facts are in dispute. Not only has Bansal failed to appear in this action, but Bungie has provided detailed evidence in support of its claims that is likely difficult to be rebutted. This factor favors entry of default judgment.

### 5. Factor Six: Whether Default is Due to Excusable Neglect

There is no evidence that Bansal's failure to appear is due to excusable neglect. Evidence submitted by counsel shows that Bansal is aware of this action and has chosen not to participate. *See* Dkt. No. 22 ¶ 3; Dkt. No. 22-1. This factor favors entry of default judgment.

### 6. Factor Seven: Strong Policy in Favor of Decision on the Merits

The Court maintains a strong policy preference in favor of resolution of Bungie's claims on the merits. But Bansal's decision not to appear in this case vitiates against this policy. This factor weighs in favor of entry of default judgment.

\* \* \*

Having considered and balanced the *Eitel* factors, the Court finds that entry of default judgment is proper on all but the CPA and unjust enrichment claims. On this basis, the Court GRANTS the Motion in part.

### D. Amount of the Default Judgment

Bungie asks the Court to award it $6,700,973.34, which represents the sum of: (1) $5,580,000 in statutory damages under the DMCA; (2) $300,000 in statutory damages based on the willful infringement of two copyrighted works, as permitted under the Copyright Act, 17 U.S.C. § 504(c); (3) $579,270 in damages as permitted by the Trademark Act, 15 U.S.C. §

1117(a); (4) attorney fees of $183,850.71; and (5) costs, including expert fees, totaling $57,852.63. The Court agrees.

First, Bungie is entitled to statutory damages for Bansal's violations of the DMCA. Under the Act, the Court may award statutory damages "in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3). Based on the allegations in the Complaint and the evidence provided, the Court is satisfied that Bansal's violations of the DMCA were willful and that an award of up to $2,500 per download of the Bansal Cheats is "just." *See, e.g.*, *Sony Computer Ent. Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1075 (N.D. Cal. 2005) (finding that an award of $2,500 for the willful sale of copyright infringing devices). Bungie has asked for only $2,000 for each of the 2,790 downloads of the Bansal Cheats and the Court finds that this amount is appropriate. The Court will therefore enter default judgment in the amount of $5,580,000 for Bansal's violations of the DMCA.

Second, Bungie is entitled to recovery of actual damages for its Copyright Act claim. *See* 17 U.S.C. § 504. Bungie seeks to recover the maximum statutory damages for the infringement of its two copyrighted works. *See* 17 U.S.C. § 504(c). Given the adequate allegations of Bansal's willful copyright infringement, the Court finds that the maximum statutory award is appropriate and awards $300,000 in statutory damages.

Third, the court finds that Bungie is entitled to damages in the amount of Bansal's profits from his sale of the Bansal Cheats which violated Bungie's rights under the Lanham Act. The Lanham Act allows the prevailing plaintiff to obtain damages measured from the defendant's profits obtained from the infringing activity. *See* 15 U.S.C. § 1117(a). Here, Bungie has provided allegations and evidence that Bansal used Bungie's trademarks without permission to sell the Bansal Cheats. Bungie also provides evidence that Bansal generated between $45,987.58 and

$579,270. Dkt. No. 51 ¶ 3; Dkt. No. 51-1; Dkt. No. 48 at 25. The Court accepts as true that Bansal earned the higher amount—given that the allegations in the complaint are accepted as true—and the Court awards $579,270 in damages for the Trademark claims.

Fourth, Bungie is entitled to its reasonable attorney fees and costs. Reasonable attorney fees and costs are recoverable under the Copyright Act and the DMCA. *See* 17 U.S.C. § 505; 17 U.S.C. § 1203(b)(5). "In deciding whether to award attorneys' fees, courts in this Circuit consider certain factors, including (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness (both in the factual and legal arguments in the case); and (5) the need in particular circumstances to advance considerations of compensation and deterrence." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008) (quotation, brackets, and citation omitted). Here, the Court finds that all five factors favor an award of attorney fees and costs. And it finds the requested amounts to be reasonable. The Court therefore approves the award of attorney fees totaling $183,850.71 and costs totaling $57,852.63. *See* Dkt. No. 51 ¶¶ 11–20; Dkt. Nos. 51-10–51-13; Dkt. No. 47 ¶ 60.

In total, the Court directs entry of default judgment in the amount of $6,700,973.34.

### E. Injunctive Relief

The Court finds it appropriate to enter a permanent injunction against Bansal on the majority of the terms Bungie requests. The Court notes that Bungie has requested an injunction that extends to its software beyond Destiny 2 and includes broad language about its affiliates, parents, and subsidiaries. The Court has limited the injunction to the Destiny 2 game, which is the sole game at issue with regard to Bungie's Copyright Act, Trademark Act, and DMCA claims. And the Court has limited the injunction to Bungie rather than any subsidiaries, parents, and affiliates, given that this action was brought solely by Bungie, Inc. and no other entities.

1  "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993). And under the Copyright Act the Court may "grant temporary and final injunctions on such terms at it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Court finds that all four *eBay* factors favor entry of a permanent injunction. First, based on the admitted allegations in the amended complaint, Bansal's copyright infringement and violations of the DMCA have caused irreparable harm to Bungie's goodwill and reputation and have caused it to incur expenses to prevent further damage from cheat software. Second, Bungie has shown that monetary damages alone will not prevent Bansal from engaging in further abusive conduct. Given Bansal's decision not to appear in this case, there can be no assurances that Bansal will no longer engage in the conduct at issue in this case. This satisfies the Court that monetary damages alone are insufficient. Third, the equities favor Bungie, who seeks to enjoin Bansal from engaging in illegal conduct that benefits only Bansal. This favors Bungie and the requested injunction. Fourth, an injunction prohibiting Bansal from engaging in further conduct that infringes on Bungie's copyrights will serve the public interest. The Court GRANTS the Motion and ENTERS the following permanent injunction against Bansal as follows:

1. Bansal, all persons acting under Bansal's direction or control—including but not limited to Bansal's agents, representatives, and employees—and those persons or entities in

active concert or participation with them who receive actual notice of this Order and Permanent Injunction by personal service or otherwise, shall immediately and permanently cease and desist from any of the following:

    a.    taking any steps (directly or indirectly through third parties) to create, distribute, advertise, market, resell, or otherwise make available software designed to be used with Destiny 2 (the "Cheating Software"), or any software whose use infringes Intellectual Property owned or controlled by Bungie, Inc. that circumvents technological measures that effectively control access to Destiny 2 and its expansions, violates the LSLA, or is designed to exploit or enable the exploitation of Destiny 2;

    b.    obtaining, possessing, accessing or using the Cheating Software or any software whose use by Defendant infringes any of Bungie's Intellectual Property related to Destiny 2, circumvents technological measures that effectively control access to Destiny 2, violates the LSLA, or is designed to exploit or enable the exploitation of Destiny 2;

    c.    promoting, advertising, or encouraging or inducing others to purchase or use—including via any social media account, website, or video-sharing account—the Cheating Software or any software whose use infringes any of Bungie's Intellectual Property related to Destiny 2, circumvents technological measures that effectively control access to Destiny 2, violates the LSLA, or is designed to exploit or enable the exploitation of Destiny 2;

    d.    selling, reselling, or processing payments for the Cheating Software or any software whose use infringes any of Bungie's Intellectual Property related

to Destiny 2, circumvents technological measures that effectively control access to Destiny 2, violates the LSLA, or is designed to exploit or enable the exploitation of Destiny 2;

e. assisting in any way with the development of the Cheating Software or any software whose use infringes any of Bungie's Intellectual Property related to Destiny 2, circumvents technological measures that effectively control access to Destiny 2, violates the LSLA, or is designed to exploit or enable the exploitation of Destiny 2;

f. sharing, copying, transferring, or distributing the Cheating Software or any software whose use infringes any of Bungie's Intellectual Property related to Destiny 2, circumvents technological measures that effectively control access to Destiny 2, violates the LSLA, or is designed to exploit or enable the exploitation of Destiny 2;

g. publishing or distributing any source code or instructional material for the creation of the Cheating Software or any software whose use infringes any of Bungie's Intellectual Property related to Destiny 2, circumvents technological measures that effectively control access to Destiny 2, violates the LSLA, or is designed to exploit or enable the exploitation of Destiny 2;

h. operating, assisting, or linking to any website designed to provide information to assist others in accessing, developing or obtain the Cheating Software or any software whose use infringes any of Bungie's Intellectual Property related to Destiny 2, circumvents technological

measures that effectively control access to Destiny 2, violates the LSLA, or is designed to exploit or enable the exploitation of Destiny 2;

      i.    reverse engineering, decompiling, packet editing, or otherwise manipulating without authorization Destiny 2, or providing assistance to any person or entity engaged in such activities; and

      j.    investing or holding any financial interest in any enterprise which Bansal knows or has reason to know is now, or intends in the future to be, engaged in any of the foregoing activities prohibited by this Order and Permanent Injunction.

2. Bansal shall take all necessary steps to disable, remove, or otherwise shut down any social network accounts under his control dedicated to the distribution or promotion of the Cheating Software, or any other software whose use infringes any of Bungie's Intellectual Property Rights related to Destiny 2, circumvents technological measures that effectively control access to Destiny 2, or violates the LSLA, and shall take all necessary steps to remove any information on any non-dedicated (*e.g.*, personal) social network accounts under his control used to distribute or promote any of the foregoing.

3. Bansal is ordered to transfer, destroy, disable, and remove the Cheating Software and any software whose use infringes any of Bungie's Intellectual Property related to Destiny 2, circumvents technological measures that effectively control access to Destiny 2, violates the LSLA, or is designed to exploit or enable the exploitation of Destiny 2.

4. Any company or entity that Bansal controls in the future shall also comply with the provisions of this Order and Permanent Injunction.

5.  Nothing contained in this Order and Permanent Injunction shall limit the right of the Parties to seek relief including but not limited to damages for any and all infringements of any Intellectual Property rights occurring after the date of this Order and Permanent Injunction.

6.  The Court shall retain jurisdiction of this action to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and enforce the provisions of this Order and Permanent Injunction.

### III.  CONCLUSION

The Court finds that default judgment is appropriately entered in Bungie's favor as to all but the CPA and unjust enrichment claims. The Court finds that damages shall be entered in the amount of: (1) $5,580,000 for violations of the DMCA; (2) $300,000 for violations of the Copyright Act; (3) $579,270 for violations of the Lanham Act, 15 U.S.C. § 1117(a); and (4) $241,703.34 in attorney fees and in costs. The total award shall be entered in the amount of $6,700,973.34. The Court also finds that entry of a permanent injunction on the terms specified above is appropriate and necessary.

Accordingly, the Court GRANTS in part the Motion, ENTERS default judgment, and permanently ENJOINS Bansal on the terms specified above.

Dated this 8th day of May 2023.

Tana Lin
United States District Judge